## STATE OF CONNECTICUT *v.* CHARLES JARZBEK
### (12868)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and GLASS, Js.

Argued June 10—decision released August 11, 1987

*M. Hatcher Norris,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom were *Roseanne Wagner,* legal intern, and, on the brief, *Maureen Platt,* former assistant state's attorney, for the appellee (state).

PETERS, C. J. The sole issue in this appeal is whether, in a criminal prosecution involving alleged sexual abuse of children, a minor victim may testify through the use of a videotape made outside the physical presence of the defendant. The defendant, Charles Jarzbek, was charged by information with the crimes of risk of injury to or impairing the morals of a child in violation of General Statutes § 53-21 and sexual assault in the fourth degree in violation of General Statutes § 53a-73a.[1] Prior to trial, the state, over the defendant's objection, obtained permission from the trial court to videotape the testimony of the defendant's daughter, one of the alleged victims, outside his physical presence. As requested by the state, this videotaped testimony was admitted into evidence at the defendant's trial. In accordance with a jury verdict finding the defendant guilty on both counts, the trial court rendered a judgment sentencing the defendant to a total effective term of imprisonment for five years, execution suspended, and five years probation. The defendant has appealed

---

[1] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

"[General Statutes] Sec. 53a-73a. SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact, or (C) physically helpless, or (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (E) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person; or (2) such person subjects another person to sexual contact without such other person's consent, or (3) such person engages in sexual contact with an animal or dead body.

"(b) Sexual assault in the fourth degree is a class A misdemeanor."

from that judgment. We remand for a further evidentiary hearing to give the state the opportunity to establish a compelling need for the videotaping procedure used in this case.

I

Before we address the merits of the defendant's attack on the videotaped evidence taken outside his physical presence, we must first identify the process by which that videotape was sought, the videotaping procedure that the trial court authorized, and the role that the videotaped testimony played at the defendant's trial. A detailed understanding of the record is essential to put the defendant's claims into focus.

The trial court permitted videotaping of the testimony of the alleged victims, T, and her brother, I, in response to a pretrial motion by the state. In support of its motion, the state presented the testimony of two clinical psychologists who opined that the children would be psychologically and emotionally traumatized if they were to be required to testify in open court in the presence of the defendant. The defendant called no witnesses of his own, although he did cross-examine the state's witnesses.

In granting the state's motion, the trial court framed the issue as "whether or not the videotaping of the testimony of these four and five year old witnesses outside the presence of the defendant and the jury in a case alleging sexual molesting by their father violates the defendant's sixth amendment right of confrontation." The court noted the widespread prevalence of child sexual abuse and the "tremendous rise" in the number of such cases in recent years. Relying upon the testimony of the psychologists, and upon the state's assertion that sexually abused children suffer further trauma when forced to testify in the presence of their alleged abusers, the court concluded that the children's

testimony could be videotaped outside the physical presence of the defendant without violating his constitutional right of confrontation.

The trial court's order set out specific procedures designed to balance the needs of the children to testify without trauma and the right of the defendant to confront the witnesses against him.[2] The court designated those who would be permitted to be present when one of the children testified: the child's mother, the judge, the state's attorney and one defense counsel. The court required the videotaping to take place in a setting comparable to a child psychology laboratory, consisting of a witness room connected by a one-way mirror to a monitoring room. The defendant, in the monitoring room, would not be visible from the witness room, but would be able to observe the witness fully and directly and to hear the testimony as it was given. The court recognized that the defendant was entitled to access to his counsel for the purpose of cross-

---

[2] Although the court did not rely on General Statutes § 54-86g, because that statute did not become effective until after the initiation of this action, the videotaping procedure it approved is essentially the same procedure now prescribed by § 54-86g.

General Statutes § 54-86g provides: "TESTIMONY OF VICTIM OF CHILD ABUSE. COURT MAY ORDER TESTIMONY TAKEN OUTSIDE COURTROOM. PROCEDURE. (a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. The attorneys and the judge may question the child. The defendant may observe and hear the testimony of the child and may consult with his attorney, but the court shall ensure that the child cannot hear or see the defendant.

"(b) If the court orders the testimony of a child to be taken under subsection (a) of this section, the child shall not be required to testify in court at the proceeding for which the testimony was taken."

examining the witness, and ordered that the witness room and the monitoring room be electronically linked by a communications device, such as an ear attachment, that would permit the defendant to communicate instantly with his counsel. To further the defendant's meaningful participation in cross-examination, the court also provided that the defendant should have the assistance of co-counsel while he was observing the videotaping from the monitoring room.

After a competency hearing, only T, the defendant's daughter, was deemed competent to testify at trial.[3] T's testimony was videotaped for trial in accordance with the court's order. Although the court's order would have enabled the defendant to observe the taping in the monitoring room, he chose not to attend the hearing. Defense counsel had a full opportunity to cross-examine T at the hearing at which her testimony was taped.

In the videotape that was introduced into evidence at trial, T described the game of "roll around," which she demonstrated through the use of anatomically correct dolls. After the dolls' clothes had been removed, she placed them together, face to face, demonstrating genital contact. She stated that she had played the game with her father "many times" and that they had always played with their clothes off. She further testified that her buttocks had gotten dirty from the game and that she had had to take a bath "[s]o Grammy [wouldn't] know." She also stated that her father had told her that he would hit her if she told anyone about the game.

The jury could reasonably have found other evidence introduced by the state at trial to be corroborative of

---

[3] The younger witness, I, appeared at the competency hearing but refused to testify, despite the efforts of the trial court and the state's attorney to elicit testimony from him.

T's videotaped testimony. The games that the defendant played with T came to light when J, her eleven year old cousin, observed T, then four years old, and I, her three year old brother, playing in a bedroom of their Middletown home. J observed the two on the bed, the victim on top of her brother, face to face, "rubbing up and down" in an obviously sexual manner. After watching his cousins for about thirty seconds, to confirm that he was not misconstruing their behavior, he asked what they were doing. Although the victim initially tried to "cover up" their activity, she then acknowledged that she and her brother had been playing a secret game that her father had taught her, and that her father had told her to keep the game a secret or else she "would never see him again."

Various adult relatives also testified, at trial, about conversations with T concerning the games she had played with her father. The victim had given essentially the same account, in varying degrees of detail, to her aunt, her mother, her maternal grandmother, and a social worker.

In his appeal, the defendant maintains that the trial court erred in admitting into evidence the videotaped testimony of his daughter because it was videotaped outside his physical presence. In challenging the legality of this videotaping procedure, the defendant has raised only two interconnected claims. Notably, he has considerably narrowed the focus of our inquiry because there are a number of possibly related questions that he has not pursued. The defendant does not challenge the competency of the minor victim, T, to testify.[4] Nor

[4] The state's motion for permission to videotape the evidence to be given by the children included a request for a videotaped hearing about the children's competency to testify. The defendant has not challenged the propriety of videotaping a competency hearing outside his physical presence. In *Stincer* v. *Commonwealth,* 712 S.W.2d 939 (Ky. 1986), rev'd, 482 U.S. , 106 S. Ct. 2658, 96 L. Ed. 2d 631 (1987). The Supreme Court of the United States recently upheld the constitutionality of such a procedure under the sixth amendment to the United States constitution.

does he oppose the use of videotaped testimony per se at criminal trials. To the contrary, he conceded at oral argument that, under appropriate circumstances, and with proper procedural safeguards in place, videotaped testimony is a constitutionally viable alternative to live testimony. The defendant likewise does not argue that the videotaped testimony presented at trial distorted the appearance or demeanor of the minor victim or unduly limited the jury's ability to judge her credibility. Finally, he does not object to the informal setting in which the hearing was conducted and he makes no claim that he was denied a full opportunity to cross-examine the victim at the pretrial videotaping session. Rather, the defendant challenges the admissibility of the videotaped testimony solely on the ground that he was denied his constitutional right to be in the witness room, physically confronting the victim, while she testified. He claims that the trial court's videotaping order violated: (1) his constitutional right to confront the witnesses against him, a right guaranteed both by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution;[5] and (2) his right to be present at trial, a right guaranteed by Practice Book § 968 in the absence of a finding of waiver, which the trial court in this case

---

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

The fourteenth amendment to the United States constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

The defendant effectively withdrew at oral argument his claim that his constitutional right of confrontation was also violated by virtue of the fact that the jury was not in the witness room observing the victim during her testimony.

did not make.[6] Because the second claim is analytically subsumed under the first, we will address the two claims jointly.

## II

We will first address the constitutional origins of the defendant's claims. Relying on the right to confrontation guaranteed to him by the federal and state constitutions; U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; the defendant maintains that his right physically to confront the witnesses against him was not satisfied by affording him the opportunity to watch T testify on videotape and to cross-examine her in the setting described above. Absent a compelling need, which has not been established here, he argues that he has a constitutional right to insist on a face-to-face confrontation with adverse witnesses.

It is useful to consider this novel constitutional claim by dividing it into a number of subsidiary issues. We must first decide whether the defendant is entitled to invoke the state constitution, which he did not cite to the trial court when it ruled on the state's pretrial motion for videotaping. Second, we must determine whether the rights protected by the relevant federal and state confrontation clauses encompass a right of physical confrontation in addition to a right of cross-examination. Third, we must decide whether the rights

---

[6] "[Practice Book] Sec. 968. ——CONTINUED PRESENCE NOT REQUIRED

"The defendant must be present at the trial and at the sentencing hearing, but if he will be represented by counsel at the trial or sentencing hearing, the judicial authority may:

"(1) Excuse him from being present at the trial or a part therof or the sentencing hearing if he waives the right to be present;

"(2) Direct that the trial or a part thereof or the sentencing hearing be conducted in his absence if the judicial authority determines that he waived his right to be present; or

"(3) Direct that the trial or a part thereof be conducted in his absence if the judicial authority has justifiably excluded him from the courtroom because of his disruptive conduct, pursuant to Sec. 892."

conferred by the federal and state confrontation clauses are absolute and, if not, under what circumstances they may give way to other compelling interests.

A

The state maintains that the defendant may not, on appeal, invoke the confrontation clause of our state constitution because he did not rely on that provision at trial. We disagree. If the record adequately supports an appellate inquiry, a constitutional challenge that implicates the fundamental constitutional right of an accused to confront witnesses against him; *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); as well as the fundamental fairness of his trial; *State* v. *Couture,* 194 Conn. 530, 560–65, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); can be raised on appeal for the first time. This is such a case. Accordingly, we will review the defendant's constitutional claims under both the state and the federal constitutions. *State* v. *Fullwood,* 199 Conn. 281, 283, 507 A.2d 85 (1986); *State* v. *King,* 187 Conn. 292, 309, 445 A.2d 901 (1982); see *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

B

The state and the defendant agree that videotaping the testimony of a witness against the defendant, outside the defendant's physical presence, implicates the right of an accused to confront witnesses against him as guaranteed by the confrontation clause of both the federal and state constitutions. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Pointer* v. *Texas,* supra, 403–404; *State* v. *Maldonado,* 193 Conn. 350, 356, 478 A.2d 581 (1984); *State* v. *Wilson,* 188 Conn. 715, 721, 453 A.2d 765 (1980); *State* v. *Hackett,* 182 Conn. 511,

517, 438 A.2d 726 (1980). The state and the defendant also agree that each of these confrontation clauses affords the criminal defendant two types of protections: "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania* v. *Ritchie,* 480 U.S. 39, 51, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987); *Delaware* v. *Van Arsdall,* 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *Delaware* v. *Fensterer,* 474 U.S. 15, 18, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985); *State* v. *Maldonado,* supra; *State* v. *Hackett,* supra.

Although most confrontation clause litigation has involved an alleged infringement on the right of cross-examination, the right of physical confrontation is an equally fundamental component of the clauses. As the United States Supreme Court has asserted, a defendant's "literal right to 'confront' the witness at the time of trial . . . forms the core of the values furthered by the Confrontation Clause." *California* v. *Green,* 399 U.S. 149, 157, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); *Delaware* v. *Fensterer,* supra; *Davis* v. *Alaska,* supra, 315; *Dowdell* v. *United States,* 221 U.S. 325, 330, 31 S. Ct. 590, 55 L. Ed. 753 (1911). The clause was originally conceived as a safeguard "to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox* v. *United States,* 156 U.S. 237, 242–43, 15 S. Ct. 337, 39 L. Ed. 409 (1895); see also 5 J. Wigmore, Evidence (3d Ed. 1940) §§ 1365, 1367. The clause finds its modern justification in the perceived role that physical confrontation

plays in the truth-seeking process. Confrontation is intended to enhance that process in a number of ways: by affording the accused an opportunity for face-to-face contact with adverse witnesses at trial; by ensuring that a witness will give his statements under oath, which impresses upon him the seriousness of the proceedings and importance that he testify truthfully; by forcing a witness to submit to cross-examination, a practice designed to elicit the truth; and by aiding the jury in assessing the credibility of a witness by observing his demeanor on the stand. *California* v. *Green,* supra, 158.

## C

The protection that the confrontation clauses afford to a criminal defendant is not, however, absolute. The United States Supreme Court has recognized that competing interests "may warrant dispensing with confrontation at trial." *Ohio* v. *Roberts,* 448 U.S. 56, 64, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); *Chambers* v. *Mississippi,* supra, 295; *Mattox* v. *United States,* supra, 243. For example, although the federal confrontation clause has been interpreted as reflecting a "preference for face-to-face confrontation at trial"; *Ohio* v. *Roberts,* supra, 63; an "adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation." *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). In this case, the videotaping procedure at issue was designed to afford the defendant a full opportunity to cross-examine the minor victim. See *Stincer* v. *Commonwealth,* 712 S.W.2d 939, 941 (Ky. 1986), rev'd, 482 U.S. , 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987). The issue presently before us, therefore, is to determine what circumstances warrant impairment of the second confrontation requirement, the defendant's right of physical confrontation.

In claiming that the videotaping procedure unduly infringed on this constitutional right, the defendant contends that the state has failed to establish an adequate justification for videotaping the adverse testimony of his daughter where she could not see him. Although he was permitted to observe the witness during her testimony through a one-way mirror, he maintains that this arrangement did not satisfy the constitutional requirement of physical confrontation. According to him, absent some compelling need, which the state has not demonstrated here, the federal and state confrontation clauses require no less than eyeball-to-eyeball confrontation between the defendant and adverse witnesses.

The state's broad response to this claim is that the constitutionality of the videotaping procedure may be upheld because the defendant had an opportunity to participate visually and electronically in the taking of the testimony that he challenges. The state maintains that this procedure afforded the defendant the equivalent of face-to-face access to the adverse witness, and that the confrontation clauses do not require more. See *Ohio* v. *Roberts,* supra, 63; *Commonwealth* v. *Willis,* 716 S.W.2d 224, 230 (Ky. 1986); *State* v. *Sheppard,* 197 N.J. Super. 411, 484 A.2d 1330 (1984). Interpreting the clauses in this manner, according to the state, adequately serves the underlying purpose of confrontation, which is to further the accuracy of the truth-seeking process. See *California* v. *Green,* supra, 161.

The state's argument is unpersuasive because it pays insufficient deference to the constitutional requirement of an opportunity for physical confrontation, which we interpret to mean eyeball-to-eyeball confrontation, between the accused and adverse witnesses. *Pennsylvania* v. *Ritchie,* supra, 51; *Delaware* v. *Van Arsdall,* supra, 678; *Delaware* v. *Fensterer,* supra, 18; *California* v. *Green,* supra; contra *Commonwealth* v. *Willis,*

supra, 230; *State* v. *Sheppard,* supra, 432. It is widely recognized that physical confrontation contributes significantly, albeit intangibly, to the truth-seeking process: "The requirement of personal presence . . . undoubtedly makes it more difficult to lie against someone, particularly if that person is an accused and present at trial." 4 J. Weinstein & M. Berger, Evidence (1979) § 800[01], p. 800-10; *Dowdell* v. *United States,* supra, 330; *United States* v. *Benfield,* 593 F.2d 815, 819 (8th Cir. 1979); C. McCormick, Evidence (3d Ed. 1984) § 245, p. 727; see H. Sahm, "Demeanor Evidence: Elusive and Intangible Imponderables," 47 A.B.A.J. 580 (1961). In addition, physical confrontation furthers other goals of our criminal justice system, in that it reflects respect for the defendant's dignity and the presumption that he is innocent until proven guilty. The state therefore cannot prevail in its categorical argument that the videotaping procedure fully complied with constitutional confrontation requirements.

The state argues, alternatively, that even if the videotaping procedure infringed on the defendant's right of confrontation, that infringement was slight and can be justified as necessary to combat the widespread sexual abuse of children that has become a growing public concern. See Connecticut Child Abuse Task Force, Final Report 5 (1986); H. Ward, C. Fletcher, N. Fuzesi & A. Sayer, Growing Up At Risk in Connecticut (1984) p. 56. The salient question for us to resolve is whether the procedures used in this case can be justified on this narrower ground.

As the state reminds us, the numerous exceptions to the rule against hearsay illustrate circumstances in which a defendant's right of confrontation is not absolute. See generally C. McCormick, supra, §§ 245, 246. For example, certain hearsay testimony, such as a dying declaration; *Mattox* v. *United States,* supra, 244; *State* v. *Onofrio,* 179 Conn. 23, 43, 425 A.2d 560 (1979);

or testimony presented at a prior adversarial hearing; *Ohio* v. *Roberts,* supra, 68–70; *California* v. *Green,* supra, 164; see *State* v. *Parker,* 161 Conn. 500, 504, 289 A.2d 894 (1971); is admissible even though the defendant does not have an opportunity to cross-examine or confront the declarant, who is unavailable to testify at trial. The state argues that, like the hearsay testimony that is deemed admissible because it bears sufficient indicia of reliability, the videotaped testimony of the minor witness in this case possessed adequate guarantees of trustworthiness to justify its admission.

The state's hearsay argument does not imply that the videotaped testimony in this case constituted hearsay.[7] Like ordinary courtroom testimony, the testimony of the minor victim in this case was videotaped at a hearing before the trial judge, held in a modified courtroom, and conducted specifically for the purpose of preserving the witness's testimony for trial. Moreover, both the state and the defendant had a full opportunity to examine and cross-examine the witness at the hearing. *Kentucky* v. *Stincer,* supra, 4903; cf. *Pointer* v. *Texas,* supra, 406–407; *Barber* v. *Page,* 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968). We agree with the state that the circumstances surrounding the tak-

---

[7] For purposes of this appeal, we rely upon the definition of "hearsay" set forth in Rule 801 of the Federal Rules of Evidence, which provides in part that " '[h]earsay' is a statement, *other than one made by the declarant while testifying at the trial or hearing,* offered in evidence to prove the truth of the matter asserted." (Emphasis added.) Fed. R. Evid. 801 (c); C. McCormick, Evidence (3d Ed. 1984) § 246. The rule against hearsay reflects the proposition that hearsay evidence is less reliable than sworn, in-court testimony because the declarant has not been subjected to the safeguards that advance the accuracy of a witness's testimony: the declarant's statements were not made under oath; he is not present at trial so that the jury may observe his demeanor and thereby judge his credibility; and he cannot be cross-examined. *State* v. *Barlow,* 177 Conn. 391, 396, 418 A.2d 46 (1979); *Cherniske* v. *Jajer,* 171 Conn. 372, 377, 370 A.2d 981 (1976); C. McCormick, supra, § 245, pp. 726–27.

ing of the minor victim's testimony make it inherently more reliable than the out-of-court declarations characterized as hearsay. Rather than view the videotaped testimony as hearsay, we therefore consider it to be the functional equivalent of testimony in court. *Commonwealth* v. *Willis,* supra, 228; note, "The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations," 98 Harv. L. Rev. 806, 823 (1985). Contrary to the defendant's claim, the videotaped testimony is therefore not inadmissible simply because it does not fall within any of the established exceptions to the hearsay rule.

A defendant's right of physical confrontation is also demonstrably short of absolute when, by his own conduct, he has waived the right of confrontation either directly or indirectly, as by having waived his right to be present at trial. For most purposes, the state cannot avail itself of a claim of waiver absent an appropriate finding by the trial court. Our Practice Book § 968 also requires such a finding, which the trial court in this case did not make. The state argues nonetheless that the defendant constructively waived his right of confrontation by virtue of the threats he made against the minor victim, threats that were testified to by the victim herself and corroborated by the testimony of others.[8]

A criminal defendant may waive his sixth amendment right of confrontation, which encompasses his right to

---

[8] Because the defendant's right to be present at trial essentially derives from the confrontation clause, we consider his claim under Practice Book § 968 to be subsumed under his claim grounded on the federal and state constitutional confrontation clauses. *United States* v. *Gagnon,* 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985); *State* v. *Simino,* 200 Conn. 113, 128–29, 509 A.2d 1039 (1986).

The state argues that, by virtue of the videotaping procedures employed here, the defendant was in fact "present" during the minor victim's testimony. Affording the defendant an opportunity to view the proceedings from behind a one-way mirror, however, is not the equivalent of affording him a right to be present.

be present at trial, by reason of his own misconduct. *Illinois* v. *Allen,* 397 U.S. 337, 342–43, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *State* v. *Drakeford,* 202 Conn. 75, 79, 519 A.2d 1194 (1987); *State* v. *Simino,* 200 Conn. 113, 128–29, 509 A.2d 1039 (1986); see also *United States* v. *Gagnon,* 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). Such a waiver implied by law must be distinguished from an express waiver of a constitutional right, which is ordinarily valid only if there is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); see *State* v. *Drakeford,* supra; *State* v. *Simino,* supra, 129; *Talton* v. *Warden,* 171 Conn. 378, 384, 370 A.2d 965 (1976). A defendant may waive his right of confrontation in a number of ways, such as by his voluntary and deliberate absence from trial; *Taylor* v. *United States,* 414 U.S. 17, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973); by disruptive conduct which requires his removal from the courtroom; *Illinois* v. *Allen,* supra; *State* v. *Drakeford,* supra; *State* v. *Simino,* supra; see *State* v. *Johnson,* 185 Conn. 163, 178–79, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983); or by causing a witness to be unavailable for trial for the purpose of preventing that witness from testifying. *United States* v. *Mastrangelo,* 693 F.2d 269, 272–73 (2d Cir. 1982), cert. denied, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 343 (1984); *United States* v. *Thevis,* 665 F.2d 616, 630–31 (5th Cir.), cert. denied, sub nom. *Evans* v. *United States,* 456 U.S. 1008, 102 S. Ct. 2300, 73 L. Ed. 2d 1303 (1982); *State* v. *Altrui,* 188 Conn. 161, 173, 448 A.2d 837 (1982). The state argues that the latter situation, whereby the defendant procures a witness's silence, either by chicanery; *United States* v. *Mayes,* 512 F.2d 637, 648–51 (6th Cir.), cert. denied, 422 U.S. 1008, 95 S. Ct. 2629, 45 L. Ed. 2d 670 (1975); by threats; *United States* v. *Balano,* 618

F.2d 624, 628–29 (10th Cir. 1979), cert. denied, 449 U.S. 840, 101 S. Ct. 118, 66 L. Ed. 2d 47 (1980); *United States* v. *Carlson,* 547 F.2d 1346, 1358 (8th Cir. 1976), cert. denied, 431 U.S. 914, 97 S. Ct. 2174, 53 L. Ed. 2d 224 (1977); or by actual violence or murder; *United States* v. *Thevis,* supra; is closely analogous to the facts of this case. According to the state, here, as in those cases, the defendant waived his right to confront the minor victim by intimidating her and threatening to punish her if she told anyone about the games she had played with him.

We conclude that the present record does not demonstrate the kind of conduct that constitutes waiver of a defendant's right of physical confrontation. In the waiver cases cited above, the defendant was suspected of scheming to obstruct justice by tampering with a witness *after* the crime in question had occurred, the judicial proceedings against him had commenced, and the witness allegedly subjected to intimidation had given pretrial testimony incriminating the defendant. Here, by contrast, although the threats made by the defendant against the minor victim were similarly designed to conceal his wrongdoing, they were made *during* the commission of the very crimes with which he is charged. We acknowledge that threats such as those made by the defendant could potentially inhibit a witness, causing the witness to testify untruthfully or to refuse to testify at all. The constitutional right of confrontation would have little force, however, if we were to find an implied waiver of that right in every instance where the accused, in order to silence his victim, uttered threats during the commission of the crime for which he is on trial. The state therefore cannot prevail on its claim that the defendant waived his right of confrontation. Cf. *State* v. *Sheppard,* supra, 435–41.

## D

Although we conclude that neither a hearsay argument nor a theory of waiver provides a persuasive analogy legitimating the videotaped procedure that was used in this case, we accept the proposition that other compelling state interests may justify dispensing with the constitutionally mandated requirement of physical confrontation. The state has proffered two possible interests as justification for an impairment of the defendant's constitutional confrontation rights. First, the state contends that its interest in combating sexual abuse of children and minimizing the trauma experienced by child victims when they participate in the judicial process outweighs the interests served by constitutional confrontation requirements. Second, it maintains that videotaping the testimony of a minor victim outside the physical presence of the accused is necessary to encourage minor victims of sex crimes to come forward and provide accurate testimony. According to the state, these two interests justify the adoption of a per se rule, applicable to all prosecutions involving sexual abuse of children, which would allow the videotaping of the testimony of a minor victim outside the physical presence of the defendant.

Interests similar to those asserted by the state in this case were addressed by the United States Supreme Court, in an analogous context, in *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982). There, the United States Supreme Court declared that a state mandatory closure statute, which required "trial judges, at trials for specified sexual offenses involving a victim under the age of 18, to exclude the press and the general public from the courtroom during the testimony of that victim," violated the first amendment right of the press and the general public to access to criminal trials. Id., 598, 602; see

*Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 577, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980). Although the court struck down the mandatory closure rule, it held that a "trial court [can] determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim." *Globe Newspaper Co.* v. *Superior Court,* supra, 609. While that case involved the rights of the press and the public that derive from constitutional guarantees of free speech and assembly; U.S. const., amend. I; Conn. Const., art. I, §§ 4,5 and 14; and this case involves the confrontation rights of criminal defendants, we find it instructive in analyzing the interests asserted by the state here.

The state's first rationale rests on the interest of the state, acting as parens patriae, in safeguarding the welfare of children. The underlying assumption is that sexually abused children who testify in open court, in the presence of their alleged abusers, suffer severe trauma and are thereby victimized a second time by the judicial system itself. See J. Parker, "The Rights of Child Witnesses: Is the Court A Protector or Perpetrator?" 17 New Eng. L. Rev. 643, 647–56 (1982); G. Melton, "Psychological Issues in Child Victim's Interaction with the Legal System," 5 Victimology 274–75 (1980); D. Libai, "The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System," 15 Wayne L. Rev. 977, 983–84 (1969). That rationale further assumes that children are uniquely vulnerable witnesses who must be treated more delicately than adult witnesses in order to protect their psychological and emotional well-being. See L. Berliner & M. Barbieri, "The Testimony of the Child Victim of Sexual Assault," 40 J. Soc. Issues 125, 128 (1984).

We acknowledge that protecting the physical and psychological well-being of children is a compelling state interest. *New York* v. *Ferber,* 458 U.S. 747, 756–57, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982); *Globe*

*Newspaper Co.* v. *Superior Court,* supra, 607. As the defendant accurately points out, however, it is by no means clear that sexually abused children are harmed, psychologically or otherwise, by the experience of testifying in the presence of their alleged abusers. To date, there is no empirical data that unequivocally supports the state's sweeping generalization that minor victims are inevitably traumatized by that experience. To the contrary, experts in child psychology who have studied sexually abused children are divided on the issue of whether they suffer undue trauma and further harm in facing the accused at trial. G. Melton, supra, 274; G. Goodman, "The Child Witness: Conclusions and Future Directions for Research and Legal Practice," 40 J. Soc. Issues 157, 167–68 (1984); D. Whitcomb, E. Shapiro & L. Stellwagen, When the Victim is a Child: Issues for Judges and Prosecutors, National Institute of Justice (1985) pp. 17–18; L. Berliner & M. Barbieri, supra. Moreover, recent studies indicate that some minor victims actually benefit from their participation in proceedings that give them a sense of power over those who have violated them and afford them a long awaited opportunity to achieve vindication. G. Melton, "Sexually Abused Children and the Legal System: Some Policy Recommendations," 13 Am. J. Family Therapy 61, 64–65 (1985); L. Berliner & M. Barbieri, supra, 135; C. Rogers, "Child Sexual Abuse and the Courts: Preliminary Findings," Social Work and Child Sexual Abuse (Conte & Shore Eds. 1982) pp. 145, 150.

Just as the United States Supreme Court, in *Globe Newspaper Co.* v. *Superior Court,* supra, 609, rejected the generalization that sexually abused children invariably suffer traumatic injury by testifying in the presence of the press and the general public, we reject the generalization that these children will be traumatized by testifying in the presence of the accused. Given the lack of consensus among recognized authorities as to

the effect on a minor victim of a face-to-face confrontation with the accused, we conclude that the state's interest in protecting the well-being of children, in and of itself, does not justify a per se rule that infringes on a defendant's right of confrontation.

The second rationale proffered by the state focuses on the difficulty of persuading minor victims to testify in sexual abuse cases and on the credibility of their testimony. The state claims that allowing minor victims to testify outside the physical presence of the accused encourages victims to cooperate with law enforcement authorities and, more importantly, enhances the reliability of their testimony. The defendant responds that the state's claim regarding the enhanced reliability of testimony taken outside the physical presence of the accused is too speculative to justify depriving a criminal defendant of his constitutional right of confrontation on that basis.

We have decided to pursue a middle ground in order to accommodate the competing concerns of the state and the defendant. Taking as our point of departure the truth-enhancing goals of the confrontation clauses, we conclude that they should not be construed so strictly as to preclude the state, in particular circumstances, from establishing a compelling need to have a minor victim of tender years testify outside the physical presence of his or her alleged sexual assaulter. We cannot discount the possibility that such a witness might be intimidated, or for any number of reasons inhibited, by the presence of the accused. For example, a minor victim may refuse to testify or may distort his or her testimony because he or she has been threatened by the defendant or is overwhelmed by feelings of guilt. In such instances, affording the defendant the right of physical confrontation would undermine the purpose of confrontation, instead of advancing its truth-seeking

goals. Compare *State* v. *Melendez,* 135 Ariz. 390, 393, 661 P.2d 654 (1982); *Commonwealth* v. *Willis,* supra, 230–31; *State* v. *Sheppard,* supra, 432.

We conclude that, in criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. Our holding that appropriate circumstances may warrant a departure from strict compliance with confrontation requirements does not, however, signal a relaxation of the underlying evidentiary requirement that appropriate circumstances be proven to exist. We emphatically reject the proposal of the state that, in every case allegedly involving the sexual abuse of children, we should presume that the credibility of a minor victim's testimony will be improved by excluding the defendant from the witness room during that witness's testimony. There is no constitutional justification for automatically depriving all criminal defendants of the right of physical confrontation during the videotaping of a minor victim's testimony. We instead mandate a case-by-case analysis, whereby a trial court must balance the individual defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the particular minor victim in question. See *Globe Newspaper Co.* v. *Superior Court,* supra, 609 and n.25.

Under the approach we adopt today, a trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony.[9] In order to satisfy its burden of proving compelling need, the

___

[9] The defendant is entitled to be physically present in the courtroom during the evidentiary hearing on compelling need.

state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. Furthermore, the state bears the burden of proving such compelling need by clear and convincing evidence. Cf. *United States* v. *Wade,* 388 U.S. 218, 240, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) (application of clear and convincing standard to questions of admissibility involving constitutional requirements going to the reliability of evidence); *United States* v. *Thevis,* supra, 631 (application of clear and convincing standard to determine whether defendant waived right of confrontation by reason of his own misconduct). Although the trial court may consider the well-being of the witness as a significant factor in its analysis, the state cannot prove need simply by demonstrating that the victim would suffer some harm if forced to testify in the presence of the accused. We reiterate that, in light of the constitutional right of confrontation at stake here, the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony, not on the injury that the victim may suffer by testifying in the presence of the accused.[10]

The state maintains that, on the facts of this case, it proved a compelling need to exclude the defendant from the witness room during the videotaping of the minor victim's testimony. At the hearing on its motion to videotape the minor victims, the state presented two clinical psychologists, both of whom are considered experts in the field of child sexual abuse. The first psychologist, Dr. Sidney Horowitz, never examined the

---

[10] If, after an evidentiary hearing, the trial court finds a compelling need to exclude the defendant from the witness room during the taping of a minor victim's testimony, defense counsel must be afforded a full opportunity, prior to the videotaping session, to meet privately with the victim in order to discuss the events in question.

children in question, but testified on the basis of his "experience with many children of similar ages." He testified, in general, as to the need to videotape the testimony of child witnesses in sexual abuse cases, and to do so outside the physical presence of the accused, in order to minimize the trauma they may suffer. He offered no opinion, however, as to whether these particular children would suffer harm or whether the reliability of their testimony would be affected by the presence of the defendant in the witness room. The second expert called by the state, Dr. David Mantell, had interviewed each of the children individually. He testified that "videotaping the children's testimony would be far superior to testifying in court." Dr. Mantell further testified that "[w]ith respect to the children in question . . . for either of them to testify in person before the accused would be traumatizing" and that it would "be easier for the children to tell their version of the events . . . if they are not facing their father . . . ."

We express no opinion as to whether the evidence presently on the record is sufficient to satisfy the state's burden of proving, by clear and convincing evidence, a compelling need to videotape the testimony of the minor victim outside the physical presence of the defendant. It is not the role of this court to make such a factual determination. It is in the sole province of the trier of fact to evaluate expert testimony, to assess its credibility, and to assign it a proper weight. *Johnson* v. *Fuller,* 190 Conn. 552, 556, 461 A.2d 988 (1983); *State* v. *Gordon,* 185 Conn. 402, 409, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State* v. *Perez,* 182 Conn. 603, 610, 438 A.2d 1149 (1981). In the present circumstances, the trial court must determine what of the expert testimony it should reject or accept. *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 161, 510 A.2d

440 (1986). Since this is a case of first impression and since the governing standard is one that we have not previously articulated, the trial court is free to consider any additional evidence that the parties may want to present on the issue of compelling need.

In summary, we hold that, in criminal prosecutions involving the alleged sexual abuse of children of tender years, videotaping the testimony of a minor victim outside the physical presence of the defendant is a constitutionally permissible practice if, and only if, the state proves by clear and convincing evidence a compelling need to exclude the defendant from the witness room during the victim's testimony. This holding rests not only on the mandates of the federal constitution, but also on independent and adequate state grounds. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; see *Michigan* v. *Long,* 463 U.S. 1032, 1041, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).

As the dissent acknowledges, this court has, on other occasions, expressly relied on a provision of the state constitution as an independent and adequate state ground in support of a decision, even where the language of the state constitutional provision essentially paralleled the language of the relevant federal constitutional provision. *State* v. *Simms,* 201 Conn. 395, 405 n.8, 518 A.2d 35 (1986); *State* v. *Burge,* 195 Conn. 232, 246 n.15, 487 A.2d 532 (1985); *State* v. *Cohane,* 193 Conn. 474, 498–99 n.19, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); *State* v. *Ferrell,* 191 Conn. 37, 45 n.12, 463 A.2d 573 (1983). These precedents are rooted in a view of federalism that has received widespread recognition. In *Michigan* v. *Long,* supra, 1040, the Supreme Court of the United States, noting its respect for the independence of state courts, urged us to indicate expressly when a state decision was based on an independent and adequate state constitutional ground. Such an

approach, the court stated, would "provide state judges with a clearer opportunity to develop state jurisprudence unimpeded by federal interference. 'It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions. . . . [*Minnesota* v.] *National Tea Co.*, [309 U.S. 551, 557, 60 S. Ct. 676, 84 L. Ed. 920] (1940).' " Id., 1041. Scholarly and judicial commentators alike have recently reemphasized that state constitutions are an independent source of civil rights and liberties. See, e.g., Developments in State Constitutional Law (ed. by B.D. McGraw) (1985).

We therefore remand this case to the trial court for an evidentiary hearing to determine whether there was a compelling need to videotape the testimony of the minor victim, T, outside the physical presence of the defendant. See *State* v. *Gonzales,* 186 Conn. 426, 435–36, 441 A.2d 852 (1982). If the court concludes that the state has not met its burden of proving such a need by clear and convincing evidence, the defendant is entitled to a new trial from which the videotaped testimony of T must be excluded. If the court concludes that the state has met its burden, the defendant's conviction must stand, subject to any further appeal by the defendant to this court concerning the validity of the trial court's ruling on this issue.

The case is remanded for further proceedings in accordance with this opinion.

In this opinion HEALEY and GLASS, Js., concurred.

SHEA, J., with whom, CALLAHAN, J., joins, dissenting. I agree with the majority that this case is largely governed by the decision of the United States Supreme Court in *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982), which invalidated a Massachusetts statute mandating

closure of the courtroom during the trial testimony of minor victims of sexual offenses as violative of the right of the press and the public to attend a criminal trial. *Globe Newspaper Co.* recognized, however, that the interest of the state in "safeguarding the physical and psychological well-being of a minor—is a compelling one." Id., 607. "That interest could be served just as well by requiring the trial court to determine on a case-by-case basis whether the State's legitimate concern for the well-being of the minor victim necessitates closure." Id., 609. The determinative issue is "whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." Id., 608.

The trial court in my judgment followed the criteria set forth in *Globe Newspaper Co.* in deciding that the defendant's five year old daughter and four year old son should be permitted to testify on videotape outside the courtroom and without his visible presence. Although the videotaping order satisfied the procedures specified in General Statutes § 54-86g, which became effective on October 1, 1985, almost one month after completion of the trial, the court did not rely upon the general presumption of the statute that all sexual abuse victims less than thirteen years old are likely to be harmed if required to testify in a courtroom. The court heard the testimony of two clinical psychologists with expertise in child abuse cases concerning the "high probability that the child would be traumatized" if required to testify in the "threatening environment of the formal courtroom setting." One of them had examined the children and had concluded that "for either of them to testify in person before the accused would be traumatizing." The court expressly referred to this testimony in the memorandum granting the state's

motion for videotaping. Thus, the references in the majority opinion to the "generalization that sexually abused children invariably suffer traumatic injury by testifying in the presence of the press and the general public" and to "a per se rule" do not apply to the case before us.

The majority opinion does not challenge the sufficiency of the evidence before the court to support the conclusion that the "psychological well-being" of the five year old child whose testimony was admitted at trial would be seriously harmed by the experience of testifying in a courtroom "eye-ball to eye-ball" with her father concerning the incidents when he abused her sexually. Nor is it maintained that the criteria for the "case-by-case" approach established by *Globe Newspaper Co.* were not satisfied. Instead, the opinion engrafts upon the *Globe Newspaper Co.* standard for balancing the likelihood of psychological harm to the child against the primacy of first amendment values a further requirement, that the state demonstrate by "clear and convincing evidence" that "the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the *trustworthiness* of the victim's testimony would be seriously called into question." (Emphasis added.) Furthermore, this unprecedented standard for determining whether the testimony of a child sexual abuse victim may be video-taped is made the "primary focus of the trial court's inquiry," thus relegating to secondary status the risk of psychological harm to the child, which *Globe Newspaper Co.* singles out as the relevant consideration where first amendment infringements are involved.

The majority opinion offers little useful guidance concerning the showing to be made in the trial court necessary to establish that the "trustworthiness" of a child victim's testimony would be suspect unless videotaped. Presumably the determination is to be made ordinar-

ily in advance of the trial so that the proceeding will not be interrupted and sufficient time will be available to arrange for videotaping, if it is ordered. Without some actual experience where the child has been unable to testify adequately in a courtroom setting, however, it is not readily apparent that a "clear and convincing" demonstration complying with the majority's novel standard can be made, assuming the usual conflict between the opinions of experts produced by the state and those of the defendant. As a practical matter, I fear that many child victims will be obliged to testify without the benefit of the safeguards designed by § 54-86g to mollify the impact of the experience of reliving the crime itself that their testimony entails and thus to protect their mental health. However serious the risk of harm to the child, under the majority view, unless the reliability of the testimony would be substantially impaired by testifying before the defendant in the normal courtroom setting, the measures intended by the legislature to lessen the psychological impact of the testimonial experience upon the child cannot be utilized.

I am not convinced that this result is required by the right of confrontation guaranteed to a defendant by the sixth amendment to our federal constitution. No impairment of the defendant's right to cross-examine can be found in the procedures used by the court to videotape the testimony of the victim in this case. I disagree with the majority that "the right of physical confrontation is an equally fundamental component" of this sixth amendment right and that physical confrontation "enhances" the truth-seeking process where the witness is a child sexual abuse victim and the defendant is a family member, as in this case. In such instances, "eye-ball to eye-ball" presence of the defendant is likely to result not only in the traumatization of the child but also in the repression or distortion of his testimony. The legislative judgment embodied in § 54-86g, author-

izing videotaping in such cases, reflects a more realistic view of human nature than that of the majority.

We shall never know whether the majority's reliance in this case upon the federal constitution is well founded or otherwise, because the majority opinion has precluded a more authoritative determination of that question by exercising the option given to state courts for avoiding review of their decisions by the United States Supreme Court in accordance with *Michigan* v. *Long,* 463 U.S. 1032, 1041, 105 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). The express reliance upon the parallel right of confrontation contained in our state constitution as an independent ground for the decision apparently insulates from further review the conclusion of the majority that the federal right demands a "trustworthiness" determination as a prerequisite to videotaping a child sexual abuse victim's testimony.

Although I have blinked at the practice in the past, I believe that it ill serves the development of the law in this country thus to remove decisions of state courts upon federal constitutional provisions from the scrutiny of our highest court. Where a state court rests its decision upon the federal constitution as an alternative to a state constitutional ground, that declaration of federal law should be subject to challenge in order to clarify whether a state constitutional amendment alone would be effective. Where there is no substantial textual difference between the federal and state constitutional provision, as is true of our parallel right of confrontation clauses, it would be far more appropriate, in the absence of applicable state precedent, to reserve consideration of the state constitutional provision until after a definitive resolution of the federal issues has been obtained. See *State* v. *Opperman,* 247 N.W.2d 673, 674–75 (S.D. 1976). The determination can then be made, if our assumptions regarding the federal counterpart prove incorrect, of whether we should adopt

a different interpretation of the similar state constitutional provision. By prematurely resorting to our state constitution as an independent ground we create an unnecessary ambiguity and also deprive ourselves of the light that further review of our decision would shed upon the federal precedent we have largely relied upon in reaching our conclusions in respect to both the federal and state constitutional grounds advanced in support thereof.

The majority perceive in our state constitutional provision a greater emphasis upon the necessity of the visible presence of the defendant during the testimony of a witness than the federal constitutional right of confrontation may warrant. We have previously read these parallel provisions to afford the same protection to a criminal defendant. Although there is no significant textual difference between them, this court unquestionably has the power to construe article first, § 8, of our state constitution to provide greater protection to a defendant than required by the sixth amendment to the federal constitution. For the reasons given, however, I would defer the resolution of that issue until a more authoritative determination of the scope of federal protection can be obtained than this court can furnish. Nevertheless, since the majority has chosen to eschew the edification upon the federal issue that our highest court might provide, I am constrained to express my present view that our state constitutional right of confrontation does not require, any more than its federal counterpart, that the state's interest in protecting children from pyschological harm be relegated to the status of a secondary consideration in deciding whether videotaping without the visible presence of a defendant is appropriate. That interest, where the court properly finds that a child sexual assault victim is likely to be seriously harmed by testifying before the defendant in a courtroom, is sufficient to outweigh the defend-

ant's traditional right to be present in person during the testimony of a witness so long as his right of cross-examination remains unhampered, as the procedures followed by the trial court in this case have ensured.

Accordingly, I would affirm the judgment.