STATE OF CONNECTICUT *v.* RAYMOND MARQUIS
(SC 15559)

Callahan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued June 5—officially released July 22, 1997

*Matthew J. Collins,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief were *James E. Thomas,* state's attorney, *Edward Narus,* assistant state's attorney, and *Nancy Gillespie,* former assistant state's attorney, for the appellee (state).

### Opinion

KATZ, J. The issue in this certified appeal is whether a trial court has the discretion, under *State* v. *Jarzbek,* 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 188 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), and General Statutes § 54-86g,[1] to order that a child witness

[1] General Statutes § 54-86g provides in pertinent part: "Testimony of victim of child abuse. Court may order testimony taken outside courtroom. Procedure. (a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the defendant, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may

be examined by an expert witness for the defense before deciding whether to grant the state's motion for videotaped testimony pursuant to § 54-86g (a). We conclude that the trial court has the discretion to order such an examination and that the trial court in this case properly exercised that discretion.

The following facts are relevant to this appeal. The defendant was charged in a long form information with one count of sexual assault in the first degree in violation of General Statutes (Rev. to 1991) § 53a-70 (a) (2)[2] and one count of risk of injury to a child in violation of General Statutes (Rev. to 1991) § 53-21.[3] The alleged victim was the defendant's daughter, R, who, at the time of the alleged acts, was four years old. On July 7, 1993, the state filed a motion for permission to videotape R's testimony outside the defendant's presence, in

be present in the room with the child during his testimony, except that the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony. If the defendant is excluded from the room or screened from the sight and hearing of the child, the court shall ensure that the defendant is able to observe and hear the testimony of the child, but that the child cannot see or hear the defendant. The defendant shall be able to consult privately with his attorney at all times during the taking of the testimony. The attorneys and the judge may question the child. If the court orders the testimony of a child to be taken under this subsection, the child shall not be required to testify in court at the proceeding for which the testimony was taken. . . ."

[2] General Statutes (Rev. to 1991) § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with a person under thirteen years of age. . . ."

[3] General Statutes (Rev. to 1991) § 53-21 provides: "Injury or risk of injury to, or impairing morals of, children. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

accordance with *State* v. *Jarzbek*, supra, 204 Conn. 683, and § 54-86g. The trial court, *Miano*, *J.*, heard the motion and, on July 30, 1993, denied it without prejudice.

On February 1, 1994, at a hearing before the trial court, *Corrigan*, *J.*, over the defendant's objection, the state renewed its motion, asserting that R was unable to testify in the presence of the defendant and that the denial of the state's motion would preclude it from producing her as a witness. At that time, the state indicated that it had no objection to the defendant having his own expert, Albert J. Solnit, a child psychiatrist, examine R. Soon thereafter, the defendant sought a court order authorizing such an examination. The state withdrew its consent for Solnit to examine R and filed a memorandum in opposition to the defendant's motion. The defendant then renewed his objection to a second hearing on the state's motion for videotaped testimony, claiming that the state had no new evidence of R's inability to testify in the presence of the defendant. The trial court ruled that it would allow a new hearing on the motion, based upon its understanding that the court that originally heard the state's motion had denied it without prejudice so that the motion could be reheard by the court conducting the trial. Regarding the defendant's request that Solnit be allowed to examine R, the trial court indicated that such an examination was neither expressly permitted nor prohibited by § 54-86g, but that the rules of practice gave the trial court the "right . . . to order discovery and disclosure where it appears to be fair."[4] The trial court indicated that it would rule on the defendant's motion after the close of the state's evidence in the *Jarzbek* hearing.

---

[4] The trial court appears to have been relying upon Practice Book § 745, which grants the judicial authority the right, upon motion of the defendant and a showing of good cause, to order such discovery "as the interests of justice may require." Although § 745 was repealed effective October 1, 1995, that provision was in effect at the relevant time.

On February 10, 1994, the state completed its evidence regarding the proposed videotaping of R's testimony and the defendant again requested that the trial court deny the state's motion. The trial court responded that it believed that the state had established a prima facie case for videotaping, but the court also granted the defendant's request to have Solnit examine R so that Solnit might offer his opinion as to the need for videotaped testimony. After a short recess, the state advised the court that neither the state nor R's guardian ad litem wanted R to be examined. The state further indicated that although R's mother had reservations about allowing an examination by Solnit, she was not opposed to it. Despite the opinion of R's mother, the state objected to making R available for an examination by Solnit and requested that the court rule on its pending motion to permit the videotaping of R's testimony. In response to the state's request, the trial court denied the motion. Both parties then moved for dismissal. The trial court dismissed the information and granted the state permission to appeal pursuant to General Statutes § 54-96.[5]

On appeal to the Appellate Court, the state claimed that the trial court improperly had: (1) determined that the defendant was entitled to have his psychiatric expert examine R before the court could grant the state's motion; and (2) denied the state's motion without exercising its statutory discretion pursuant to § 54-86g. *State* v. *Marquis*, 36 Conn. App. 803, 653 A.2d 833 (1995). The Appellate Court declined to review the issues raised by the state, concluding that the record was inadequate for review. Id. That court concluded that the factual

---

[5] General Statutes § 54-96 provides: "Appeals by the state from Superior Court in criminal cases. Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

and legal bases of the trial court's ruling were unclear and that, in light of the state's failure to request an articulation, it read an ambiguous record to support, rather than to undermine, the judgment. Id., 804.

This court granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's judgment dismissing the information on the ground that it was impossible to ascertain from the record the basis on which the trial court denied the state's motion to videotape the victim's testimony." *State* v. *Marquis*, 233 Conn. 902, 657 A.2d 641 (1995). We subsequently reversed the judgment of the Appellate Court as to the sufficiency of the record, concluding that the record was unambiguous and that "a reasonable reading of the record disclose[d] that the trial court refused to permit videotaping of the child solely because the defendant's psychiatrist was not permitted to examine the child."[6] *State* v. *Marquis*, 235 Conn. 659, 663, 668 A.2d 710 (1995). We then remanded the case to the Appellate Court for its consideration of the merits of the trial court's ruling. Id. On remand, the Appellate Court determined that the trial court had improperly ordered an examination of the child by a defense expert as quid pro

---

[6] We note that the language of our holding in *State* v. *Marquis*, 235 Conn. 659, 663, 668 A.2d 710 (1995), may be read to indicate that we agree with the state's position that the trial court had ordered the defense examination of R as a quid pro quo for the videotaped testimony. Although neither party has called our attention to this language, in answering the certified question and reacquainting ourselves with the record, we conclude that our prior holding was incomplete. We were correct that the record was sufficient for review, and that the trial court's denial of the state's motion for videotaped testimony was *a result of* the state's refusal, in defiance of a court order, to allow Solnit to interview R. What we left unclear, however, as we explain in the text of this opinion, was that, in the context of the trial court's dialogue with the state and the defendant, the examination was not a quid pro quo to the granting of the state's motion, but, rather, was ordered by the court so that it would have the information it needed to make an informed decision regarding the state's request.

quo to its granting of the state's motion for videotaped testimony pursuant to § 54-86g, and had failed to exercise its discretion under *State* v. *Jarzbek*, supra, 204 Conn. 683, when it denied the state's motion. Consequently, the Appellate Court reversed the judgment of the trial court. *State* v. *Marquis*, 42 Conn. App. 186, 200, 679 A.2d 386 (1996).

Subsequently, the defendant filed a petition for certification to appeal, which we granted limited to the following issue: "May a trial court, in exercising its discretion under *State* v. *Jarzbek*, [supra, 204 Conn. 683], and General Statutes § 54-86g, take into account the fact that the state's motion is supported by expert testimony and, therefore, order the child witness to be examined by the defendant's expert?" *State* v. *Marquis*, 239 Conn. 934, 684 A.2d 709 (1996). We conclude that because the Appellate Court misinterpreted the basis upon which the trial court had granted the defendant's request for the expert examination and denied the state's motion for videotaped testimony, the Appellate Court incorrectly construed the nature of the trial court's actions and its authority to take such actions. Accordingly, we answer the certified question in the affirmative and reverse the judgment of the Appellate Court. Further facts will be provided as necessary.

The defendant argues that the trial court had the authority to order an examination of R by Solnit before deciding whether to grant the state's motion for videotaped testimony. Specifically, the defendant contends that, because the state presented as evidence the testimony of an expert witness regarding the psychological impact the defendant's presence would have on R, fundamental fairness required that the defendant be allowed to have his own expert examine her. The state argues in response that the trial court has no authority, discretionary or otherwise, to order an examination of a child whose videotaped testimony the state seeks to

elicit, and that even if the trial court in this case *did* have discretionary authority, it abused that discretion by failing to exercise it.[7]

The following facts are necessary for the resolution of this claim. On February 8, 1994, after the state had refused to give its permission for Solnit to interview R, the defendant moved that the court order the examination. The state objected to such an order, claiming that

[7] As a preliminary matter, the state argues that this court should dismiss the defendant's appeal on the ground that certification was improvidently granted. Specifically, the state claims that the defendant, in his petition for certification, misrepresented the holding of the Appellate Court by stating that the Appellate Court had decided that the trial court lacked discretion to order an examination of the child by a defense expert. The state contends that it is clear from the Appellate Court's decision that that court determined that the trial court had such discretion but failed to exercise it.

A close reading of the Appellate Court's opinion reveals that its actual conclusions were: (1) the defendant was not *automatically* entitled to an examination of the child by a defense expert as a quid pro quo to the trial court's granting of the state's motion for videotaped testimony; and (2) the trial court failed to exercise properly its discretionary authority under *State v. Jarzbek*, supra, 204 Conn. 683, when it denied the state's motion without making the proper evidentiary findings.

The Appellate Court did not rule as to whether the trial court had the discretion to allow the defendant's expert to examine the child, but indicated, in dicta, that the trial court had no such discretion, when it stated: "[U]nder the *previous* system . . . the trial court was entitled, although not mandated, to order a psychiatric examination of the child if it deemed such an examination necessary. . . . [General Statutes §] 54-86h effected a substantial change in the procedure for establishing whether child victims are to be considered competent to testify. That procedure does not provide for a psychiatric examination by a defense expert prior to the granting of a motion to videotape the child's testimony pursuant to § 54-86g. . . . By enacting §§ 54-86g and 54-86h as part of the same public act [see Public Acts 1985, No. 85-587, §§ 1 and 2] and in light of the case law existing at the time of enactment, the legislature clearly intended to create an updated and consistent body of law regulating the testimony of child victims of assault, sexual assault or abuse." (Citations omitted; emphasis added.) *State v. Marquis*, supra, 42 Conn. App. 197. This passage fairly can be read to support the question as presented by the defendant, i.e., whether the Appellate Court was incorrect regarding the trial court's discretionary authority, and, accordingly, we conclude that the question as certified properly incorporates the issues raised by the Appellate Court in its decision.

it was beyond the authority of the court. In response to the state's motion for a second *Jarzbek* hearing, and the defendant's motion for a court-ordered examination, the court stated: "It would be my intention to hear the evidence that [Edward Narus, Assistant State's Attorney] has, and for the purpose of counsel, the court can't agree with everything Mr. Narus has indicated. *There's nothing in the statute that either permits or prohibits the defense from having an examination. There is in the practice rules the right of the court to order discovery and disclosure where it appears to be fair.* There's nothing in the case law that appears to prevent the defense from having such a discovery, but I think it's obvious to the court at this point that we should go on with the evidence you have for a determination as to what procedure should be followed . . . ." (Emphasis added.)

On February 10, 1994, after the state had presented its evidence in support of videotaping, the defendant once again moved the court to deny the state's motion, claiming that the state had not met its burden of proof. The court inquired whether the defendant wanted to offer evidence, and the following colloquy took place:

"The Court: The state has produced a prima facie case. You have evidence to present?

"[Matthew Collins, Defense Counsel]: I do have evidence, but I would also ask, as part—I would ask that I be allowed to have the child examined as part of this hearing also.

"The Court: That's the order I get. I just have given the order *on that motion* to have the child examined by Dr. Solnit *as a matter of this motion.*" (Emphasis added.)

After a short recess, the state renewed its opposition to the court-ordered examination:

"Mr. Collins: Your Honor, I'm ready to proceed, but apparently Mr. Narus has something he'd like to address to the court.

"Mr. Narus: That's correct, Your Honor. As I understand Your Honor's comments prior to the recess, you are, in fact, or have indicated that the child victim here, the case must be turned over to the defense expert, Mr. Solnit, for examination of her at 2 o'clock. Is that—that's as I understand that.

"The Court: That's what I had said and ordered.

"Mr. Narus: Okay. And in that case, the state obviously had made a motion to oppose that request by the defense counsel, and I would ask the court to make a ruling on that motion to deny that request of the state.

"The Court: I thought that was the answer to the motion. I held a decision in reservation until I heard the state's case, and I'm satisfied that the state has given a prima facie case. *So at this point of time, I grant the defense motion to have the child examined by their expert, which I believe is Dr. Solnit, and that comes as a matter of Practice Book rules of discovery* or the state of mind as offered to limit confrontation or for any other purpose. The other—adverse side has an opportunity of examining for that state of mind.

"In this particular matter, if the state is going to succeed in videotaping the child's testimony out of the presence of the defendant and/or out of the presence of the jury, the defense is entitled *in that hearing* to determine whether or not such a procedure is necessary. So at this point in time, I have sufficient evidence that the state has produced a prima facie case, and the defense *at this time* is entitled to examination of the child." (Emphasis added.)

At that point, the state informed the court that it, as well as the child's guardian ad litem, objected to the

examination and would not allow Solnit access to R. The state then moved for a ruling on its motion for videotaping:

"Mr. Narus: Okay, okay. Then with respect to the state's motion for videotaping, in light of the state's refusal to—or I shouldn't say refusal, but the state's objection to undergoing the process by which the court ordered the state to turn the child over to the defense, I would then ask for a ruling on the motion for videotaping at this point in time.

"The Court: On the refusal of the state to permit the child to be examined by the defense psychiatrist, then the court does have to deny the motion for videotaping."

The Appellate Court apparently understood these colloquies to mean that the trial court had ordered the defense examination of R as a quid pro quo for granting the state's motion to videotape her testimony. We conclude that this interpretation is incorrect. The trial court was not establishing quid pro quo, but, rather, was ensuring that the defendant be given the meaningful *Jarzbek* hearing to which he was entitled under the United States and Connecticut constitutions. *State* v. *Jarzbek*, supra, 204 Conn. 704–705. In this case, a meaningful hearing required that Solnit be allowed to examine R in order to form his own conclusions as to R's ability to testify in the presence of the defendant and to advise the court of the necessity for videotaped testimony.

"[I]n criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. [The] holding that appropriate circumstances may warrant a departure from strict compliance with confrontation requirements does not, however, signal a relaxation of

the underlying evidentiary requirement that appropriate circumstances be proven to exist. . . . There is no constitutional justification for automatically depriving all criminal defendants of the right of physical confrontation during the videotaping of a minor victim's testimony. . . .

"[A] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. Furthermore, the state bears the burden of proving such compelling need by clear and convincing evidence. Cf. *United States* v. *Wade*, 388 U.S. 218, 240, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) (application of clear and convincing standard to questions of admissibility involving constitutional requirements going to the reliability of evidence); *United States* v. *Thevis*, [665 F.2d 616, 631 (5th Cir.), cert. denied, 456 U.S. 1008, 102 S. Ct. 2300, 73 L. Ed. 2d 1303 (1982)] (application of clear and convincing standard to determine whether defendant waived right of confrontation by reason of his own misconduct). . . . [I]n light of the constitutional right of confrontation at stake here, the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony . . . ." (Citation omitted.) *State* v. *Jarzbek*, supra, 204 Conn. 704–705.[8]

---

[8] Although the trial court in *Jarzbek* was not acting pursuant to § 54-86g, which did not become effective until after the initiation of that action, "the videotaping [approved by the trial court was] essentially the same procedure . . . prescribed by § 54-86g." *State* v. *Jarzbek*, supra, 204 Conn. 686. Those cases that were initiated after the enactment of the statute, however, have continued to rely on the *Jarzbek* analysis; cf. *State* v. *Bonello*, 210 Conn. 51, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 3268, 106 L. Ed. 2d

The state concedes that a *Jarzbek* hearing, by its very nature, requires that the trial court exercise discretion in reviewing the evidence regarding a child witness' ability to testify reliably in the presence of the defendant. "*Jarzbek* requires an individualized, case-by-case assessment of the need to resort to the videotaping of the complaining minor witness' testimony outside the physical presence of the accused." *State* v. *Bonello*, 210 Conn. 51, 58–59, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 3268, 106 L. Ed. 2d 612 (1989). The state nevertheless contends that the trial court had no authority to order that Solnit be allowed to examine R in order to give testimony at that hearing. In support of its argument, the state relies in part on General Statutes § 54-86h,[9] companion legislation to § 54-86g that precludes pro forma competency hearings for child witnesses. The state claims that § 54-86h demonstrates a legislative intent to shield child victims from examinations by defense experts. We are not persuaded.

In *State* v. *James*, 211 Conn. 555, 563–65, 560 A.2d 426 (1989), we compared § 54-86h to rule 601 of the Federal Rules of Evidence, which provides in relevant part that "[e]very person is competent to be a witness . . . ." We noted that "[t]his rule 'reflects the philosophy that few persons are inherently incapable of testifying in a useful manner.' Comment, 'The Competency Requirement for the Child Victim of Sexual Abuse: Must We Abandon It?', 40 U. Miami L. Rev. 245, 252 (1985)." *State* v. *James*, supra, 563. We also noted, however, that "[r]ule 601 has not been construed to remove wholly the traditional control a judge may exercise to ensure that

612 (1989); and, therefore, insofar as it applies to the issue raised by the present appeal, we need not analyze the statute separately.

[9] General Statutes § 54-86h provides: "No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."

evidence presented to a jury has at least a minimum degree of reliability and relevance." Id., 564. The trial court maintains the authority to admit or exclude the testimony of a child based on the court's assessment of the child's ability to offer relevant and reliable evidence. By requesting permission to videotape R's testimony outside the presence of the defendant, the state called into question R's ability to testify reliably in a formal courtroom setting and in the presence of the defendant. In such a situation, the trial court has the authority to take those measures it considers necessary to determine that ability. Id.

"The [ability] of a witness [to testify reliably] is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law. *State* v. *Orlando*, 115 Conn. 672, 675, 163 A. 256 [1932]." *State* v. *Manning*, 162 Conn. 112, 115, 291 A.2d 750 (1971). In the present case, the trial court concluded that the defendant was entitled to have Solnit examine R for the purpose of testifying at the *Jarzbek* hearing, thereby providing the court with information that the trial court considered critical, under the facts of this case, to make an informed decision. In ordering that the examination take place, the trial court implicitly acknowledged that, although the state had established a prima facie case for videotaping, *the court's own assessment needs* and fundamental fairness to the defendant required that Solnit be allowed to examine R.

"[T]he ends of justice will best be served by a system . . . [that] gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial. See, e.g., Brennan, 'The Criminal Prosecution: Sporting Event or Quest for Truth?,' 1963 Wash. U.L.Q. 279; American Bar Association Project on Standards for Criminal Justice, Discovery and Procedure Before

Trial 23-43 (Approved Draft 1970); Goldstein, 'The State and the Accused: Balance of Advantage in Criminal Procedure,' 69 Yale L.J. 1149 (1960)." *Wardius* v. *Oregon*, 412 U.S. 470, 473–74, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973). "[I]n the absence of a strong showing of state interests to the contrary, discovery must be a two-way street."[10] Id., 475. In the present case, the state moved for a procedure that called into question R's ability to testify in the presence of the defendant, yet denied the defendant the opportunity to obtain evidence in opposition to the motion, evidence that the trial court deemed necessary to make a fully informed decision. For the state to take such a position is antithetical to the constitutional underpinnings of a *Jarzbek* hearing.

We cannot say that the trial court's conclusion, following the state's evidence, which included expert testimony, was clearly erroneous or a clear abuse of discretion. See *State* v. *Manning*, supra, 162 Conn. 115. If the defendant is entitled to a hearing on the state's motion for videotaped testimony, he is entitled to have the trial court ensure that such a hearing is meaningful because, as we recognized in *Jarzbek*, the hearing on the motion serves to protect "the right of an accused to confront witnesses against him as guaranteed by the confrontation clause of both the federal and state constitutions. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Chambers* v. *Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Pointer* v. *Texas*, [380 U.S. 400, 403–404, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)]; *State* v. *Maldo-*

---

[10] At oral argument before this court, the state was asked repeatedly whether it could point to any case, civil or criminal, in which this court, or any other court of this jurisdiction, had allowed a party to adduce expert testimony as to a material issue but, as a matter of law, denied the opposing party the opportunity to adduce the same kind of expert testimony. The state was unable to offer any such precedent, and our own research has revealed none.

*nado*, 193 Conn. 350, 356, 478 A.2d 581 (1984); *State* v. *Wilson*, 188 Conn. 715, 721, 453 A.2d 765 (1980); *State* v. *Hackett*, 182 Conn. 511, 517, 438 A.2d 726 (1980)." *State* v. *Jarzbek*, supra, 204 Conn. 691–92.

We agree, therefore, with the defendant that the trial court recognized and properly exercised its discretionary authority when it granted the defendant's request to have Solnit examine R for the purpose of providing expert opinion evidence at the *Jarzbek* hearing. It necessarily follows that, when the state refused to produce the child for the court-ordered examination or to allow her to testify in open court, the court properly denied the state's motion for videotaped testimony. Because the state had made it clear that R would not testify in open court, and had further admitted that without R's testimony it would be unable to proceed with the prosecution of its case against the defendant, the court properly granted the parties' motions for dismissal.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.