## STATE OF CONNECTICUT *v.* JOHN BRONSON, SR.
### (SC 16273)

Sullivan, C. J., and Borden, Norcott, Palmer and Ronan, Js.

Argued March 23—officially released September 11, 2001

*Susan M. Hankins*, assistant public defender, with whom, on the brief, were *Thomas West* and *David DeRosa*, certified legal interns, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom were *Elizabeth C. Leaming*, assistant state's attorney, and, on the brief, *Patricia A. Swords*, state's attorney, and *Toni Smith-Rosario*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The defendant, John Bronson, Sr., was convicted by a jury of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A),[1] and risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[2] He was sentenced to serve a total effective sentence of thirty months. The dispositive issue is whether the defendant was entitled to a court-appointed expert's examination of the alleged

---

[1] General Statutes § 53a-73a provides in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[2] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

child victim when, during the child's testimony, her ability to testify reliably in the presence of the defendant suddenly came into question. We conclude that, under the circumstances of this case, the defendant was entitled to such an examination. Accordingly, we reverse the judgment of conviction.

The defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the judgment of the trial court. *State* v. *Bronson*, 55 Conn. App. 717, 740 A.2d 458 (1999). We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court. *State* v. *Bronson*, 252 Conn. 944, 747 A.2d 523 (2000). On appeal before this court, the defendant claims that the Appellate Court improperly: (1) concluded that the trial court had properly denied the defendant's motion for a continuance in order to prepare for an unexpected hearing on whether to videotape the testimony of the victim pursuant to General Statutes § 54-86g;[3] (2) concluded that the trial court had

---

[3] General Statutes § 54-86g (a) provides: "In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the defendant, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony, except that the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony. If the defendant is excluded from the room or screened from the sight and hearing of the child, the court shall ensure that the defendant is able to observe and hear the testimony of the child, but that the child cannot see or hear the defendant. The defendant shall be able to consult privately with his attorney at all times during the taking of the testimony. The attorneys and the judge may question the child. If the court orders the testimony of a child to be taken under this subsection, the

properly denied the defendant's motion for an examination of the victim by a court-appointed expert; (3) affirmed the trial court's denial of the defendant's motion for a mistrial; (4) affirmed the trial court's denial of the defendant's motion to redact portions of the pretrial videotape of the interview of the victim; and (5) concluded that the record was inadequate to review the defendant's claims that the trial court had violated the defendant's rights under Practice Book § 40-13 (d)[4] or article first, § 8, of the Connecticut constitution and the fifth, sixth and fourteenth amendments to the United States constitution[5] by precluding the defendant from presenting six character witnesses. We reverse the judgment of the Appellate Court as to the first two issues and, therefore, need not reach the remaining issues.

child shall not be required to testify in court at the proceeding for which the testimony was taken."

[4] Practice Book § 40-13 (d) provides: "No witness shall be precluded from testifying for any party because his or her name or statement or criminal history was not disclosed pursuant to this rule if the party calling such witness did not in good faith intend to call the witness at the time that he or she provided the material required by this rule. In the interests of justice the judicial authority may in its discretion permit any undisclosed individual to testify."

[5] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . . No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

The opinion of the Appellate Court sets forth the relevant facts. "From September through November, 1994, the defendant's daughter-in-law left her four year old daughter, M, and her one and one-half year old son, A, with the defendant and his wife, the children's grandparents, while she went to work part-time. When the defendant and his wife took care of the children, the children would spend the prior night with them.

"On or about November 10, 1994, when M's mother came to the grandparents' house to take the children home, the defendant's wife told M's mother that M had wet her pants while playing. M's mother decided to wait until she got home to change M. She gave both A and M baths. While drying M, she noticed that M's vaginal area was red and puffy, and asked what was wrong with her 'pee-pee.' M responded that she did not know, but when asked if someone had touched her there, M responded, 'Yes.' When M's mother asked who had touched her, M responded that the defendant had touched her.

"Elaine Yordan, a physician, examined M on November 21, 1994. Yordan found that M's vaginal area was normal and noted that her finding was not inconsistent with M's statement. The next day, Diane Edell, program coordinator and interviewer at the child abuse diagnostic center at Saint Francis Hospital and Medical Center, interviewed M. That interview was videotaped. M stated that the defendant had touched her 'pee-pee' with his hand while they were lying on a couch." *State* v. *Bronson*, supra, 55 Conn. App. 719–20. Additional facts will be set forth as necessary.

We first address the defendant's claim that the Appellate Court improperly upheld the trial court's denial of the defendant's motion for a court-appointed expert's examination of M. The defendant argues that this examination was necessary because M's breakdown on the

witness stand was a complete surprise to all parties and was in direct conflict with the state expert's prior assessment of the child's ability to testify reliably. As a result of that assessment, no hearing pursuant to *State v. Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988) (evidentiary hearing necessary for state to demonstrate compelling need for excluding defendant from room during videotaping of minor victim's testimony) was held prior to the trial, and M began her testimony in the defendant's presence. The defendant claims that the denial of his request was an abuse of the trial court's discretion. We agree, and we conclude that because the request for expert examination should have been granted, we necessarily are compelled to conclude that the defendant's request for a continuance also was improperly denied.

The following additional facts are pertinent to the defendant's claim. Prior to trial, the state had informed the court and the defendant that videotaping M's testimony would not be necessary. This was determined pursuant to the state's representation that M's treating therapist had assessed that M was emotionally capable of testifying in open court.[6] On Friday, September 13, 1996, the state called M as its first witness. During direct examination, M was able to testify regarding general subjects, such as her name and birthday, and was able to give information about her school and family. When the prosecutor began to question her about the sexual assault, however, M began to cry, and Linda Heslin, the victim's advocate, came up to the witness stand, picked up the child and left the courtroom.[7] The court then

---

[6] Shelley Ainsworth was M's treating therapist at the relevant time. According to the state, "Ainsworth opined that M was competent and would be able to testify." Relying on this assessment, a *Jarzbek* hearing was not requested before trial.

[7] The relevant testimony was as follows:

"[Assistant State's Attorney]: Does the grandpa have a beard and moustache, the one that we're talking about?

excused the jury, stating: "Ladies and gentlemen, it's

"[M]: Yes.

"Q. Okay. And you said you played the game called Rex with this—

"A. Yes.

"Q. And why do you call him the bad grandpa?

"A. I don't know.

"Q. Is that how you feel?

"A. Yes.

"Q. Do you have another grandpa?

"A. Yes.

"Q. Okay. And what do you call him?

"A. Grandpa.

"Q. When you played the game called Rex with your other grandpa, the one that's in the courtroom today, whose name was Rex?

"A. The bad grandpa.

"Q. Do you remember what your name was when you played that game?

"A. No.

"Q. Did you have a special name?

"A. No.

"Q. Can you tell us what happened when you played the game called Rex with the bad grandpa?

"A. Yes.

"Q. Okay. Why don't you tell us.

"A. My private.

"Q. What about your private? Did something happen to it?

"A. Yes.

"Q. Can you tell us what happened to it? You can take your time.

"A. (Pause) No.

"Q. You don't want to tell us? Did any part of grandpa's—Did any part of grandpa touch your private?

"A. Yes. . . .

"Q. What part of his body touched your private, [M]?

"A. His hand.

"Q. When grandpa's hand touched your private, did it touch you on your private or was it on the inside of your private?

"A. I can't remember.

"Q. Okay. That's okay.

"Can you tell us what it felt like when he touched you on your private?

"(At this time, [M] started to cry.)

"Do you want to take a break? . . .

"Okay. May we have a brief recess?

"The Court. We're going to take a short recess, ladies and gentlemen. We'll excuse you from here and then we'll call you back and we can resume.

"Okay. [M] you can go with this lady.

"(Whereupon, the victim's advocate picked up the witness and took her out of the courtroom.)"

become clear to us that we're not going to be able to resume the testimony at this point . . . ."

When court reconvened, the state moved for a hearing pursuant to *State* v. *Jarzbek*, supra, 204 Conn. 683, to determine whether the state would be permitted to videotape the remainder of M's testimony outside the presence of the defendant, pursuant to § 54-86g. Eleven minutes later, the defendant moved for a continuance until the next court session in order to conduct legal research in preparation for this hearing.[8] The court denied the defendant's motion and held the *Jarzbek* hearing that same afternoon. At the hearing, defense counsel moved for an expert examination of M. The trial court responded, "I just don't think expert testimony is required based on what's been said here. We've got laypeople testifying. It's based on their observations of the child in the court, and I don't think a further continuance is necessary." As a result of the *Jarzbek* hearing, M's testimony was videotaped.

I

The defendant claims that the trial court abused its discretion by denying: (1) his request for a continuance; and (2) his request for appointment of an expert to examine M. We conclude that, under the particular facts and circumstances of this case, the appointment of an expert to examine M was required. That conclusion renders it unnecessary for us to consider the denial of the continuance separate from the question of the denial of the appointment of an expert.

Pursuant to § 54-86g, the trial court is afforded the discretion necessary to grant a motion to have a child

---

[8] Defense counsel stated: "I'd ask for a continuance to allow me to address this motion. I received the motion at three minutes to two. It is now, by my clock, eight minutes after two. . . . My review of the case law over the luncheon recess indicates there has to be an evidentiary hearing, and I see that as allowing me to present testimony, and I would like a continuance till Tuesday to prepare for this, prepare for the evidence . . . ."

victim testify outside of the presence of the defendant. "The [ability] of a witness [to testify reliably] is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law." (Internal quotation marks omitted.) *State* v. *Marquis*, 241 Conn. 823, 836, 699 A.2d 893 (1997).

In the exercise of this discretion, the trial court must conduct an assessment of the victim's reliability as a witness pursuant to the test set forth in *Jarzbek*. "We . . . mandate a case-by-case analysis, whereby a trial court must balance the individual defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the particular minor victim in question. . . . [A] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. Furthermore, the state bears the burden of proving such compelling need by clear and convincing evidence." (Citation omitted.) *State* v. *Jarzbek*, supra, 204 Conn. 704–705.

To this end, the trial court has the discretion to order an expert's examination or to grant a party's request for such an examination. In *State* v. *Marquis*, supra, 241 Conn. 836, we held that a trial court has the discretion to order that a child witness be examined by an expert witness before deciding whether to grant the state's *Jarzbek* motion. We concluded that the defendant was entitled to have the examination of the child victim by the defense's own expert. Id. We stated that it was an issue of "fundamental fairness to the defendant [that]

required that [the expert] be allowed to examine [the alleged victim]." Id. "If the defendant is entitled to a hearing on the state's motion for videotaped testimony, he is entitled to have the trial court ensure that such a hearing is meaningful because, as we recognized in *Jarzbek*, the hearing on the motion serves to protect the right of an accused to confront witnesses against him as guaranteed by the confrontation clause of both the federal and state constitutions." (Internal quotation marks omitted.) Id., 837.

Furthermore, we note that the criteria to be assessed in this evaluation must not include the possible trauma the victim might experience by testifying in the presence of the defendant. "[I]n light of the constitutional right of confrontation at stake here, the primary focus of the trial court's inquiry must be on the *reliability* of the minor victim's testimony, not on the *injury* that the victim may suffer by testifying in the presence of the accused." (Emphasis added.) *State* v. *Jarzbek*, supra, 204 Conn. 705. Thus, it is not sufficient that the victim cried. The inquiry must be allowed to go further and determine whether there is a loss of the witness' reliability.

II

The defendant argues that the state failed to prove that M was incapable of providing reliable testimony while in the defendant's presence. The defendant claims that because M's breakdown while on the witness stand was so unexpected in light of her therapist's evaluation, he was therefore entitled to an objective expert's opinion of M's reliability. The state argued that such an examination was not warranted. We conclude that the defendant's request for an expert's assessment should have been granted.

The standards that we articulated in *State* v. *Marquis*, supra, 241 Conn. 823, as applied to the facts of this

case, lead us to conclude that: (1) the trial court abused its discretion in denying the defendant's motion for an expert examination of M; (2) the defendant cannot be required to establish a particular harm in the circumstances of this case; and (3) these conclusions compel the further conclusion that the continuance should have been granted.

In *Marquis*, we held that "a trial court has the discretion, under . . . *Jarzbek* . . . and . . . § 54-86g, to order that a child witness be examined by an expert witness for the defense before deciding whether to grant the state's motion for videotaped testimony pursuant to § 54-86g (a)." Id., 824–25. "[I]n criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. [The] holding that appropriate circumstances may warrant a departure from strict compliance with confrontation requirements does not, however, signal a relaxation of the underlying evidentiary requirement that appropriate circumstances be proven to exist. . . . There is no constitutional justification for automatically depriving all criminal defendants of the right of physical confrontation during the videotaping of a minor victim's testimony. . . .

"[A] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. Furthermore, the state bears the burden of proving such compelling need by clear and convinc-

ing evidence. Cf. *United States* v. *Wade*, 388 U.S. 218, 240, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) (application of clear and convincing standard to questions of admissibility involving constitutional requirements going to reliability of evidence); *United States* v. *Thevis*, [665 F.2d 616, 631 (5th Cir.), cert. denied, 456 U.S. 1008, 102 S. Ct. 2300, 73 L. Ed. 2d 1303 (1982)] (application of clear and convincing standard to determine whether defendant waived right of confrontation by reason of his own misconduct). . . . [I]n light of the constitutional right of confrontation at stake here, the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony . . . . *State* v. *Jarzbek*, supra, 204 Conn. 704–705. . . .

"*Jarzbek* requires an individualized, case-by-case assessment of the need to resort to the videotaping of the complaining minor witness' testimony outside the physical presence of the accused. *State* v. *Bonello*, 210 Conn. 51, 58–59, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. [2103], [104] L. Ed. 2d [664] (1989). . . .

"In *State* v. *James*, 211 Conn. 555, 563–65, 560 A.2d 426 (1989), we compared § 54-86h to rule 601 of the Federal Rules of Evidence, which provides in relevant part that [e]very person is competent to be a witness . . . . We noted that [t]his rule reflects the philosophy that few persons are inherently incapable of testifying in a useful manner. Comment, The Competency Requirement for the Child Victim of Sexual Abuse: Must We Abandon It?, 40 U. Miami L. Rev. 245, 252 (1985). *State* v. *James*, supra, 563. We also noted, however, that [r]ule 601 has not been construed to remove wholly the traditional control a judge may exercise to ensure that evidence presented to a jury has at least a minimum degree of reliability and relevance. Id., 564. The trial court maintains the authority to admit or exclude the testimony of a child based on the court's assessment of the child's ability to offer relevant and reliable evi-

dence. By requesting permission to videotape [the victim's] testimony outside the presence of the defendant, the state called into question [the victim's] ability to testify reliably in a formal courtroom setting and in the presence of the defendant. In such a situation, the trial court has the authority to take those measures it considers necessary to determine that ability. Id.

"The [ability] of a witness [to testify reliably] is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law. *State* v. *Orlando*, 115 Conn. 672, 675, 163 A. 256 [1932]. *State* v. *Manning*, 162 Conn. 112, 115, 291 A.2d 750 (1971). . . .

"[T]he ends of justice will best be served by a system . . . [that] gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial. See, e.g., Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth?, 1963 Wash. U.L.Q. 279; American Bar Association Project on Standards for Criminal Justice, Discovery and Procedure Before Trial 23–43 (Approved Draft 1970); Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149 (1960). *Wardius* v. *Oregon*, 412 U.S. 470, 473–74, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973). [I]n the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. Id., 475." (Internal quotation marks omitted.) *State* v. *Marquis*, supra, 241 Conn. 833–37.

The court held the *Jarzbek* hearing only a very short time after M had been removed from the stand. At that hearing, M's father testified that she was "[v]ery uncomfortable" testifying in the defendant's presence, and that he did not know if she was fearful. Heslin testified that M was "mad at [the defendant] and scared to go back [into the courtroom]." This evidence suffered

from the fact that it came from persons focused, not on the necessity of ensuring the reliability of M's testimony, but on M's needs. Furthermore, it was based on a very short period of time in which the inquiry into that reliability could be made. Thus, insofar as the record discloses, there was no inquiry into the possibility that, despite what had occurred while M was on the stand, she might, within a reasonable time period, such as the ensuing weekend, recover sufficiently to resume the stand and testify in the defendant's presence. In addition, the state had earlier represented to the court that M's treating therapist had determined that M *was* capable of testifying in the defendant's presence. Thus, at the point in the proceedings at which the *Jarzbek* hearing was held, there was on record an expert's opinion to that effect, and the immediately preceding occurrences were not sufficient, in content and length, conclusively to rebut that opinion. Given all these facts, we conclude that the court abused its discretion in denying the defendant's request for a second expert to be appointed to assess M's ability to testify reliably in the defendant's presence.

With respect to whether this ruling of the trial court harmed the defendant, we conclude that, in these particular circumstances, harm may be presumed. It would be impossible for the defendant to establish now that, had the motion been granted, the court-appointed expert would have testified that M could have testified in the defendant's presence. Thus, in this circumstance, where the court abused its discretion in denying the motion, we must presume the requisite prejudice to the defendant to require reversal of the judgment.

This conclusion also controls the defendant's separate claim that the court abused its discretion in denying his antecedent motion for a continuance. In light of our conclusion that the court should have granted the motion to appoint an expert to examine the child, it

follows that a continuance for that purpose, if for no other, was necessary.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case for a new trial.

In this opinion the other justices concurred.