******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

McDONALD, J., concurring. "Criminal discovery is not a game. It is integral to the quest for truth and the fair adjudication of guilt or innocence." *Taylor* v. *Illinois*, 484 U.S. 400, 419, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (Brennan, J., dissenting). All too often, when it comes to discovery obligations, parties improperly shift their focus from an orderly quest for truth and allow the discovery process to devolve into "an adversary game." (Internal quotation marks omitted.) *State* v. *Morales*, 232 Conn. 707, 723, 657 A.2d 585 (1995). The law, however, does not avert its focus from the quest for truth. It is for this reason that our law provides fulsome discovery procedures for material information relevant to the defense of a criminal defendant. Our criminal justice system is at its best when the court and the parties to a criminal prosecution are mindful of the truth seeking function of the discovery process and, through it, a criminal trial.

Although I join the majority opinion, I write separately to emphasize the proper scope of criminal discovery and because I believe that the complainant's journals, in which she had written about her relationship with the defendant, Andres C., and his sexual abuse of her, were most likely discoverable pursuant to Practice Book § 40-11. Nevertheless, because the defendant did not rely on § 40-11 before the trial court, or assert that argument before either the Appellate Court or this court, this cannot serve as a basis to reverse the judgment of the Appellate Court.

The complainant and the defendant, the complainant's uncle, lived with the complainant's grandmother. *State* v. *Andres C.*, 208 Conn. App. 825, 828, 266 A.3d 888 (2021). During the period that the complainant and the defendant were living at the grandmother's house, there were numerous incidents of sexual abuse. Id., 828–29. This continued after the complainant moved

out of her grandmother's house. Id., 829. When she was sixteen years old, the complainant began seeing a therapist, and she disclosed the sexual abuse by the defendant. Id. The defendant was ultimately charged with sexual assault in the third and fourth degrees and risk of injury to a child. Id.

On the first day of trial, during the state's redirect examination of the complainant, one of the prosecutors inquired whether the complainant had ever seen her therapy records. Id., 844–45. The complainant responded: "I have my journals. . . . I don't have—I don't know [the therapist's] records, but I have my journals."[1] Upon further inquiry, the complainant stated: "For the journals, [the therapist] would have me write a lot about either my relationship to [the defendant], with [the defendant], how the abuse happened. I would reflect a lot on how it made me feel, how I was missing, why I didn't want to talk. Sometimes in the journal we'd write about—like if I was having family fights, so my journals are the abuse that I lived with him, but also family fights with my siblings and my mom." The complainant "also stated that the journals were her words through therapy . . . ."

On recross-examination, defense counsel asked the complainant whether she had reviewed her journals prior to testifying. The complainant "responded that she had looked at a 'few pages' in one of her journals." *State* v. *Andres C.*, supra, 208 Conn. App. 845. The complainant clarified that the journals were written while she was in therapy and that they were the best record of what happened. Id., 845–46.

Defense counsel then requested an in camera review of the complainant's journals. Id., 846. Defense counsel also suggested that the trial court review the journals

---

[1] It appears that neither the prosecutors nor defense counsel had previously been aware of these journals.

for exculpatory material. Id. "The court responded that the obligation to review the journals for exculpatory material rested with the prosecutors and that, if there was a claim of privilege, it would conduct an in camera review. Defense counsel responded: 'I am asking for it as discovery; however, I was trying to be as respectful as I could be to the complainant.' The court then suggested a further discussion of this issue in chambers and mentioned the possibility of recalling the [complainant] as a witness, if necessary." Id.

The following day, the trial court summarized the discussions that had occurred in chambers. Id. The court explained that the journals should be reviewed by the state to determine if anything in the journals, totaling approximately 200 pages, comprises statements by the complainant concerning the incidents in question and whether there was any exculpatory material. Id. The court instructed the prosecutors to turn over any material concerning the sexual assault allegations and any exculpatory material. Id., 846–47. The court also noted that, because the journals were written in Spanish, the prosecutors needed the assistance of someone on their staff to interpret the journals. Id., 847. Both the prosecutors and defense counsel agreed, and neither raised any objection to proceeding in that manner. Id.

The next day, the trial court placed the following order on the record: "It is my order that the state review those journals to determine if there is any exculpatory information with respect to those journals that need[s] to be disclosed to the defendant, and that includes any inconsistent statements and any statements regarding the therapy method used that may have fostered or . . . instructed [the complainant] to use her imagination or [to] speculate or embellish as to what happened, but, basically, the . . . state needs to review those journals

under its *Brady* obligations[2] and . . . [to] turn over to the defendant anything that is exculpatory." (Footnote added; internal quotation marks omitted.) Id. After the state completed its review, the prosecutors submitted four pages from the journals for review by the trial court. Id., 848–49. The trial court "determined that one page should be disclosed to the defense." Id., 849.

The issue addressed in part I of the majority opinion is whether the defendant was entitled to a copy of the complainant's journals. The defendant contended before the Appellate Court; id., 851; and now contends before this court, that he was entitled to disclosure of the journals under Practice Book §§ 40-13A and 40-15 (1). Although not argued by the defendant, I write separately because I believe that the journals were most likely discoverable under Practice Book § 40-11 and to note that nothing in the majority opinion should be read to preclude such a disclosure under that provision.

I begin with the well settled principle that "our constitution imposes certain obligations on the state to ensure that the criminal trial is a search for truth, not an adversary game." (Internal quotation marks omitted.) *State v. Morales*, supra, 232 Conn. 723; see also, e.g., *State v. Artis*, 314 Conn. 131, 155, 101 A.3d 915 (2014). This is because "[t]he ends of justice will best be served by a system . . . [that] gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial." (Internal quotation marks omitted.) *State v. Bronson*, 258 Conn. 42, 54, 779 A.2d 95 (2001). As a result, "[t]he purpose of criminal discovery is to prevent surprise and to afford the parties a reasonable opportunity to prepare for trial." (Internal quotation marks omitted.) *State v. Tutson*, 278 Conn. 715, 744–45, 899

[2] See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

A.2d 598 (2006). It is to this end that "our law . . . provides liberal discovery procedures for criminal defendants, both as a matter of right . . . and as matters for the discretion of the [trial] court . . . ." (Internal quotation marks omitted.) *State* v. *Malave*, 250 Conn. 722, 732, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). Indeed, the Division of Criminal Justice admirably acknowledges that "providing a defendant with discovery is one of the ways that the state ensures a just result in every case and protects the defendant's constitutional right to a fair trial." Office of the Chief State's Attorney, Connecticut Division of Criminal Justice Policies and Procedures (October 6, 2023) Policy 512 (Discovery), p. 1. The division also advises prosecutors that, "[i]n many cases, prosecutors may maintain an 'open file' policy allowing the defense to have access to the case file. An 'open file' policy is often beneficial and can advance the interests of justice, but prosecutors cannot rely on such a policy to satisfy their disclosure obligations." Id., p. 8.

With this background in mind, I turn to Practice Book § 40-11 (a), which provides in relevant part: "Upon written request by a defendant filed in accordance with Section 41-5 and without requiring any order of the judicial authority, the prosecuting authority, subject to Section 40-40 et seq., shall promptly, but no later than forty-five days from the filing of the request, unless such time is extended by the judicial authority for good cause shown, disclose in writing the existence of, provide photocopies of, and allow the defendant in accordance with Section 40-7, to inspect, copy, photograph and have reasonable tests made on . . . (1) [*a*]*ny books, tangible objects, papers, photographs, or documents within the possession, custody or control of any governmental agency*, which the prosecuting authority intends to offer in evidence in chief at trial or *which*

*are material to the preparation of the defense* or which were obtained from or purportedly belong to the defendant . . . ." (Emphasis added.)

In short, if a defendant files a written request for discovery under Practice Book § 40-11, the state is required to turn over any books, tangible objects, papers, photographs, and documents within the state's possession if (1) the state intends to offer the items into evidence, (2) the items are material to the preparation of the defense, or (3) the items were obtained from, or belong to, the defendant. Once such a request is made in writing, the state has a continuing obligation to disclose such materials to the defendant. See Practice Book § 40-3 ("[i]f prior to or during trial a party discovers additional material previously ordered to be disclosed or which the party is otherwise obligated to disclose, such party shall promptly notify the other party and the judicial authority of its existence").

The second circumstance in which a defendant is entitled to discovery—when it is material to the preparation of the defense—is a significant provision of our rules of criminal procedure that may provide critical evidence that a defendant may not be able to obtain otherwise. This language is critical to effectuating the goal of robust discovery of material information in the possession of the state to ensure that the criminal trial is a search for the truth. The history of Practice Book § 40-11 confirms that fact and reveals that the phrase "material to the preparation of the defense" in § 40-11 (a) (1) was intentionally included in order to broaden the scope of our rules of discovery with respect to information that must be furnished by the state to a criminal defendant.

In or around 1976, the Rules Committee of the Superior Court, with the approval of the Chief Justice and the Chief Court Administrator, created the Advisory

Committee to Revise the Criminal Rules, the members of which were recommended by the chief judges of the Superior Court and the Court of Common Pleas, the chief state's attorney, the chief public defender and the president of the Connecticut Bar Association. See Connecticut Judicial Dept., Foreword to Proposed Rules of Criminal Procedure (Final Draft January, 1976) p. iii. The selected membership was comprised of a preeminent group of prosecutors, public defenders, private practitioners, and judges, and was chaired by Judge (later Justice) David M. Shea. The Advisory Committee was tasked with undertaking a comprehensive revision and consolidation of the rules of criminal procedure. See id. Relevant to this case, the Advisory Committee's final draft of proposed rule 19 provided that, upon written motion made by a defendant, the prosecuting authority shall disclose "[a]dequately identified books, tangible objects, papers, photographs, or documents which are within the possession, custody, or control of any state agency, and which are *material to the preparation of his defense* or are intended for use by the prosecuting authority, as evidence in chief at trial . . . ." (Emphasis added.) Connecticut Judicial Dept., Proposed Rules of Criminal Procedure (Final Draft January, 1976) p. 40 (proposed criminal procedure rule 19 (a) (3)). The editor's note to proposed rule 19 (a) provides that the provision "enlarges the items discoverable by the defendant as of right." Id., p. 41 (editor's note to proposed rule 19 (a)); see also L. Orland, Connecticut Criminal Procedure (1976) p. 102 (commentary to Practice Book (1963) § 2152 (effective October 1, 1976)) (this section is "[a] broad provision, an expansion of existing practice, [that] enumerates items [that] are discoverable as of right" (footnote omitted)). Proposed rule 19 was adopted by the judges of the Superior Court, as drafted, in 1976 as § 2152. See Practice Book (1963) § 2152 (3) (effective October 1, 1976).

In 1981, § 2152 was renumbered § 741 but remained substantively unchanged. In 1994, however, the Criminal Division Task Force recommended to the Rules Committee that it remove subdivision (3) of § 741, which included the "material to the preparation of the defense" language.[3] Criminal Division Task Force, Superior Court Criminal Rules (Final Draft June 14, 1994) § 741, p. 66. During the public hearing on the proposed changes to § 741, however, Chief Public Defender Gerard A. Smyth emphasized the policy behind the discovery rules, stating: "*If the public policy behind the proposed changes to the discovery rules is to make the trial more of a search for truth*, as the commentary states, then I submit that disclosure of police reports prior to pretrial would be consistent with this policy." (Emphasis added.) Public Hearing on Proposed Superior Court Rules Before the Rules Committee of the Superior Court (June 5, 1995) p. 13 (Rules Committee Public Hearing). Significantly, the public defender for the judicial district of Stamford-Norwalk, Attorney Joseph G. Bruckmann, charitably noted that the task force, "perhaps through oversight, ha[d] eliminated the category of items material to the preparation of the defense" in § 741. Id., p. 19. He emphasized the importance of this language, explaining that he could "recall, in more than one case, significant pieces of evidence [he had] introduced at trial in support of the [defense's] theory of the case that were generated through the initial police investigation. For instance, crime scene photographs [that] were not obtained from the defendant, did not purportedly belong to him and were not introduced by the state."

---

[3] The task force comment to § 741 provides that the "proposal is patterned after [N.Y. Crim. Proc. Law § 240.20 (repealed January 1, 2020)], and suggests a concept of limited discovery on demand rather than on court order." Criminal Division Task Force, Superior Court Criminal Rules (Final Draft June 14, 1994) p. 67. The task force did not offer any substantive reason or rationale as to why it sought to substantially scale back discovery that would be material to the preparation of a defense.

Id. Attorney Bruckmann concluded by stating: "If the desire in amending this provision is to enhance the search for truth, the Rules Committee proposal certainly, as worded now, does not further that objective and is, in fact, more restrictive than our present rule." Id.

The Rules Committee flatly rejected the task force's proposed deletion of the "material to the preparation of the defense" language and, instead, moved that language to subdivision (2) of § 741; see 57 Conn. L.J., No. 4, p. 44C (July 25, 1995); and the judges of the Superior Court agreed with the Rules Committee's recommendation to retain the language. Since that time, this provision was renumbered; see Practice Book § 40-11; but it has remained substantively unchanged.

It is evident that, throughout the history of Practice Book § 40-11 and its predecessor provisions, going back to 1975, the "material to the preparation of the defense" language was specifically contemplated and deemed necessary for inclusion by the Rules Committee and, through the committee, the judges of the Superior Court as a whole. As Attorney Bruckmann noted, there may be "significant pieces of evidence" that defense counsel may wish to enter into evidence in support of the defense's theory of the case that would otherwise be unobtainable because the prosecuting authority does not intend to offer the materials as evidence-in-chief and the items were not obtained from, and did not purportedly belong to, the defendant. Rules Committee Public Hearing, supra, p. 19. Therefore, in keeping with the history of § 40-11, which reflects that it is a "broad provision . . . [and] an expansion of existing practice"; L. Orland, supra, p. 102; I emphasize that nothing in the majority opinion precludes a defendant from seeking the discovery of items, such as the complainant's journals, pursuant to § 40-11 when they are material to the preparation of the defense.

In this case, there is no contention that the state intended to offer the journals into evidence or that the journals were obtained from, or belonged to, the defendant. Accordingly, under Practice Book § 40-11, the defendant most likely would have been entitled to the journals in the course of discovery because they were "material to the preparation of the defense . . . ." Practice Book § 40-11 (a) (1). There can be little doubt that the journals, which contained information about the complainant's relationship with the defendant and how the alleged abuse happened, would be material to the preparation of the defendant's defense. The complainant admitted that the journals, which were written closer to the time of abuse than the time of her testimony, were the best evidence of what had happened. Although the circumstances under which the state came into possession of the journals were certainly unusual, the state has a continuing obligation to disclose discoverable material to the defendant, even when it comes to light during trial. See Practice Book § 40-3.

The problem in this appeal, however, is clear. The defendant failed to raise a claim before this court or the Appellate Court regarding Practice Book § 40-11. Accordingly, § 40-11 cannot serve as a basis to reverse the judgment of the Appellate Court. Nothing in the logic of the majority opinion, in my view, would preclude the disclosure of such material in another case following a proper request for discovery under § 40-11 that requests such books, tangible objects, papers and documents from the state, as the journals would have been material to the preparation of the defense.

For the foregoing reasons, I respectfully concur.