******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JESUS RUIZ *v.* COMMISSIONER OF CORRECTION
## (AC 41947)

Alvord, Bright and Flynn, Js.

*Syllabus*

The petitioner, who had been convicted of sexual assault in the first degree, sexual assault in the fourth degree and risk of injury to a child, sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance. He claimed, inter alia, that his trial counsel were deficient in representing him at a pretrial hearing on a motion in limine filed by the state, which sought permission to videotape the testimony of the child victim in the petitioner's absence, pursuant to *State* v. *Jarzbek* (204 Conn. 683). The habeas court rendered judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. The habeas court had found that the petitioner failed to show that he was prejudiced by the allegedly deficient performance of his trial counsel. This court thereafter reversed in part the habeas court's judgment and remanded the case to the habeas court for further proceedings. This court concluded that the habeas court's prejudice analysis was improper. This court's remand order directed the habeas court to consider prejudice and, if necessary for the ultimate resolution of the petitioner's ineffective assistance claim, to consider the petitioner's allegations of deficient performance. Thereafter, on remand, the habeas court denied the petition for a writ of habeas corpus, from which the petitioner, on the granting of certification, appealed to this court. He claimed, inter alia, that the habeas court improperly concluded that his right to effective assistance of counsel was not violated by the performance of his trial counsel in challenging the reliability of the state's witness, G, at the *Jarzbek* hearing. *Held* that the habeas court correctly determined that the petitioner failed to demonstrate deficient performance of his trial counsel: trial counsel challenged G's testimony on multiple grounds, including, inter alia, reliability and G's qualifications; moreover, trial counsel's performance was not deficient for not asking specific questions or inquiring more extensively into certain areas, as the cross-examination strategy was tactical in nature and this court would not second-guess counsel's strategy; furthermore, trial counsel's failure to present the testimony of a defense expert at the *Jarzbek* hearing was not deficient performance, as the trial court had denied the petitioner's motion to have the expert interview the victim pursuant to *State* v. *Marquis* (241 Conn. 823), and counsel's decision not to present that testimony without the court having granted the *Marquis* motion constituted sound trial strategy.

Argued October 21, 2019—officially released February 18, 2020

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court, *DiPentima, C. J.*, and *Sheldon* and *Flynn, Js.*, which reversed in part the judgment of the habeas court and remanded the case for further proceedings; subsequently, the court, *Kwak, J.*, denied the petition and rendered judgment thereon, and the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's

attorney, *Rebecca A. Barry*, supervisory assistant state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Jesus Ruiz, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that his right to effective assistance of counsel was not violated by the performance of his trial counsel in challenging the reliability of the state's witness at a pretrial hearing on the state's motion in limine seeking permission to videotape the testimony of the child victim, N,[1] in the petitioner's absence pursuant to *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).[2] We affirm the judgment of the habeas court.

This appeal comes to us following a remand by this court in *Ruiz* v. *Commissioner of Correction*, 156 Conn. App. 321, 113 A.3d 485, cert. denied, 319 Conn. 923, 125 A.3d 199 (2015), and cert. granted, 319 Conn. 923, 125 A.3d 199 (2015) (appeal withdrawn January 28, 2016), directing the habeas court to conduct further proceedings relating to the petitioner's claims of ineffective assistance of trial counsel at a *Jarzbek* hearing.

At the outset of this procedurally complex case, we briefly discuss the legal principles underlying a *Jarzbek* hearing. In certain circumstances, the videotaping of the testimony of an alleged child victim of sexual assault, outside the physical presence of the defendant, is constitutionally permissible. See *State* v. *Jarzbek*, supra, 204 Conn. 704–705; see also General Statutes § 54-86g (a). In deciding whether the state has met its burden of establishing, by clear and convincing evidence, a compelling need to exclude the defendant, the trial court balances, on a case-by-case basis, the defendant's sixth amendment right of confrontation with the state's interest in obtaining reliable testimony. See *State* v. *Jarzbek*, supra, 704–05. To demonstrate a compelling need, the state must show that the trustworthiness of the testimony of the child complainant seriously would be called into question because he or she would be so intimidated, or otherwise inhibited, by the physical presence of the defendant. See id.

We do not repeat all of the underlying facts concerning the petitioner's sexual abuse[3] of N, set forth in this court's opinion in the petitioner's direct appeal from his conviction. See *State* v. *Ruiz*, 124 Conn. App. 118, 120, 3 A.3d 1021, cert. denied, 299 Conn. 908, 10 A.3d 525 (2010). The relevant facts and procedural history set forth on direct appeal concerning the *Jarzbek* hearing are as follows: "The state filed a motion to videotape N's testimony outside the presence of the [petitioner] pursuant to § 54-86g (a) and *State* v. *Jarzbek*, supra, 204 Conn. 704–705. The court held a hearing to determine whether N had the ability to testify reliably in the presence of the [petitioner]. Pamela Goldin, a licensed clini-

cal social worker employed by the Child Guidance Clinic for Central Connecticut, Inc., for more than twenty-seven years, testified that she had been treating N for two years. According to Goldin, N has 'weak language skills,' '[h]er ability to express herself is below average for her age,' she has poor self-esteem, she becomes 'overwhelmed with anxiety' and she is 'very easily intimidated.'

"Goldin discussed a specific experience with N. She testified that N was distraught that her mother did not believe the accusations that she had made about the [petitioner]. When Goldin and N prepared for a session at which N's mother also would be present, Goldin testified that N talked at length about all the things she wanted to make sure she told her mother. Goldin testified that N 'froze' when the time came for N to speak to her mother. She could not speak and said very little of what she wanted to say, even though she was in a 'secure, familiar setting with a number of people there with whom she was comfortable and felt supported.' Goldin testified that this behavior occurred at two separate sessions. She testified that during her work with N, she and N discussed the allegations that N had made against the [petitioner] 'so that if she wanted to discuss at length what happened with [the petitioner] that she could. And she did tell me a little bit, but she was clearly uncomfortable discussing it at great length. And I didn't press her.' She stated that testifying in the [petitioner's] presence, in addition to being a 'real hardship for [N]' that would 'set her back emotionally,' would cause N to 'freeze.' Goldin testified: 'I don't think she'd speak—I think she'd just be totally intimidated.' 'I doubt that she would . . . speak in the way that people are going to need her to speak in order to give the information you'll be asking of her.'

"Following the hearing, the [trial] court found: '[Goldin] observed [the] child for almost two years. How [N] reacts when this incident would come up. How, when she confronted the mother, she became [mute and] left the room. . . . [K]nowing this young girl for two years, [Goldin testified that N] could not testify truthfully and reliably in front of the [petitioner]. [Goldin gave] her reasons why, based upon her anxiety level, she'd be frightened, she'd be intimidated, her lower level of education, her low level of esteem . . . . I find [that] the state has met its burden by clear and convincing evidence pursuant to *Jarzbek*. . . . [Goldin] also said that [N] would be so stressed . . . I just can't take two years of treatment and ignore it. She didn't meet this young girl a week or a month ago.' Accordingly, the court granted the state's motion." (Footnote omitted.) Id., 122–24.

On direct appeal, the petitioner claimed, inter alia, that the trial court improperly had permitted N to testify outside the petitioner's presence because the state had

failed to show, by clear and convincing evidence, that N's testimony would have been less reliable if she had been required to testify in the petitioner's presence. Id., 121–22. The petitioner also claimed that his sixth amendment right to confrontation had been violated. Id., 122. This court disagreed with the petitioner and concluded that "the [trial] court's finding that the state showed, by clear and convincing evidence, that if N testified in the [petitioner's] presence, her testimony would be less reliable or accurate was not clearly erroneous. The [petitioner's] right to confrontation is not violated when the state makes that showing." Id., 127–28.

The petitioner filed the operative petition for a writ of habeas corpus on October 2, 2012. The claim relevant to this appeal is that the petitioner's trial counsel, John Ivers and Robert Casale,[4] provided ineffective assistance at the *Jarzbek* hearing by failing to (1) conduct an adequate cross-examination of the state's expert witness, and (2) present an expert witness. The habeas court, *Sferrazza, J.*, denied the claim and, in so doing, addressed only the prejudice prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

On appeal from the court's decision in the first habeas proceeding, the petitioner claimed, inter alia, that the court improperly rejected his claim that his trial counsel had rendered ineffective assistance at the *Jarzbek* hearing. See *Ruiz* v. *Commissioner of Correction*, supra, 156 Conn. App. 327. This court concluded that the first habeas court's prejudice analysis was improper but disagreed "with the petitioner's contention that a presumption of prejudice arises any time the right to confrontation is violated." Id., 328. Instead, this court held that the prejudice analysis of the first habeas court was improper because it focused on whether the witness' testimony would have been different had confrontation occurred. Id., 337. This court held that "this case must be remanded to the habeas court for consideration of prejudice . . . and, if necessary for the ultimate resolution of the petitioner's ineffective assistance claim, consideration of the petitioner's allegations of deficient performance, and any applicable special defenses filed by the respondent, the Commissioner of Correction." Id., 338.

On remand from this court, the second habeas court, *Kwak, J.*, rejected the petitioner's claim that his trial counsel rendered ineffective assistance during the *Jarzbek* hearing. Concerning the cross-examination of Goldin, the court found: "Goldin's testimony during the *Jarzbek* hearing was not extensive, spanning less than thirty pages. . . . Goldin, who has a master's degree in social work and had been employed as a licensed clinical social worker for approximately three decades, had a therapeutic relationship with N. Goldin treated

N for approximately two years preceding the *Jarzbek* hearing. Attorney Ivers conducted voir dire, raised objections on direct examination, and conducted cross-examination of Goldin. The cross-examination elicited from Goldin that her therapeutic relationship came about through efforts to assist N to deal with her problems, in particular with her estranged mother. However, N eventually also discussed the sexual abuse during their sessions. The discussions regarding the sexual abuse and the petitioner were a minor component of the therapeutic sessions. Attorney Ivers effectively highlighted through his questioning that the therapeutic sessions primarily focused on N and her mother. According to Goldin, N was very nervous and concerned about potentially testifying in juvenile court proceedings and the criminal case. Attorney Ivers also elicited from Goldin that there are no professional guidelines to follow when determining if a child is too intimidated to testify, that it is a 'judgment call' by the person assessing the child." (Citation omitted.)

The second habeas court further found: "The petitioner contends that counsel failed to adequately cross-examine, impeach, and otherwise challenge the testimony of . . . Goldin during the *Jarzbek* hearing. The evidence presented to the prior habeas court and this court does not support that contention. A careful review of the transcripts from the prior habeas proceedings and the testimony presented to this court after the remand fail to show how counsel was deficient. Nor has the petitioner demonstrated what counsel should have done differently in the cross-examination of Goldin, nor has the petitioner proven that counsel could have more effectively impeached and challenged Goldin's *Jarzbek* testimony. The petitioner failed to prove that Goldin was not qualified to conduct the evaluation, that she did not conduct an adequate evaluation, and that her opinions were not reliable."

The second habeas court concluded: "It has already been established that the trial court's ruling after the *Jarzbek* hearing, which permitted the videotaped testimony of N in the petitioner's absence, was based on clear and convincing evidence presented by the state and not clearly erroneous. *State* v. *Ruiz*, supra, 124 Conn. App. 127–28. . . . After reviewing the *Jarzbek* hearing transcript, this court concludes that counsel's performance did not fall below that of a reasonably competent criminal defense attorney. . . . Based upon the foregoing, the court concludes that the petitioner has failed to prove that Goldin was not qualified to conduct the evaluation, that she did not conduct an adequate evaluation, that her opinions were unreliable, and that it was necessary for the defense to conduct an evaluation of N. The court further concludes that there is no evidence that trial counsel rendered deficient performance regarding the *Jarzbek* hearing." (Citations omitted.) The court further concluded that the peti-

tioner had failed to prove the prejudice prong of *Strickland* v. *Washington*, supra, 466 U.S. 668. The court granted the petitioner's certification to appeal. This appeal followed.

The following standard of review is applicable. To succeed on his claim of ineffective assistance of counsel, the petitioner must demonstrate both that (1) his trial counsel made errors so serious that they were not functioning as counsel as guaranteed by the sixth amendment to the United States constitution, and (2) there is a reasonable likelihood that the result would have been different but for counsel's unprofessional errors. See *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). A court may decide against the petitioner on either ground. See id., 713. When determining whether the representation received by the petitioner was constitutionally adequate, we employ a plenary standard of review. *Hickey* v. *Commissioner of Correction*, 329 Conn. 605, 617, 188 A.3d 715 (2018).

The petitioner claims that the court improperly concluded that his trial counsel did not perform deficiently during the *Jarzbek* hearing. He argues that his trial counsel failed to undermine adequately the reliability of Goldin's conclusion that N was unable to testify reliably in the petitioner's presence. He contends that the combination of counsel's failure to adequately impeach, cross-examine, and challenge Goldin's testimony and the failure to present expert testimony to undermine Goldin's testimony constituted deficient performance. We disagree.

We first address the petitioner's argument that his trial counsel failed to conduct an adequate impeachment, cross-examination, and challenge of the reliability of Goldin's testimony. He lists five areas of claimed importance, of which he contends trial counsel were deficient for failing to either inquire into or inquire into more extensively: Goldin's role as N's therapist was antithetical to conducting an independent evaluation necessary for a *Jarzbek* assessment; Goldin failed to engage in therapy to assist N in testifying in the petitioner's presence; Goldin failed to conduct an adequate background assessment of N's ability to speak in the petitioner's presence; Goldin's opinion was not based on scientific method; and Goldin lacked the qualifications necessary to conduct a *Jarzbek* assessment. The petitioner stresses that his argument hinges on trial counsel's failure to challenge adequately the reliability, not the admissibility, of Goldin's testimony.

After carefully reviewing the record, we agree with the conclusion of the second habeas court that the petitioner has failed to demonstrate that his trial counsel's performance was deficient. Trial counsel challenged Goldin's testimony on multiple grounds, includ-

ing that Goldin's therapy sessions with N were focused on N's personal life and her relationship with her mother rather than her relationship with the petitioner; Goldin based her opinion on two therapy sessions wherein N tried to talk to her mother, not the petitioner; Goldin's assessment was based on N's personal difficulties rather than on her ability to testify reliably in the petitioner's presence; Goldin had not been educated in forensic analysis in sexual assault cases; and Goldin did not conduct a special meeting with N to determine if N could testify in the petitioner's presence.

The record reveals that counsel thoroughly challenged the reliability of Goldin's testimony. The petitioner, however, in hindsight, argues that counsel should have asked certain questions and should have inquired more extensively in certain areas. What the petitioner's argument fails fully to appreciate is that there are many ways to provide effective assistance of counsel and that we not only give counsel the benefit of the doubt, but we affirmatively must entertain possible reasons for why counsel may have proceeded as they did. See *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 637, 212 A.3d 678 (2019).

The petitioner argues that counsel did not effectively show that Goldin had failed to conduct an adequate background evaluation. He specifically argues that Goldin did not seek out information regarding N's behavior toward the petitioner during the time period from when the abuse occurred to when N reported the abuse. Although counsel did not specifically inquire into N's behavior toward the petitioner, reasonable explanations exist for this decision. Counsel could have determined that N's behavior toward the petitioner prior to her revealing the abuse was not especially relevant, particularly in light of Goldin's testimony on direct examination as to N's emotional state regarding the possibility of seeing the petitioner in court. Goldin testified that N was "very frightened" about testifying in court and was "anxious" about seeing the petitioner again.

The petitioner contends that counsel were deficient in failing to show that Goldin had failed to engage in therapy to assist N in testifying in the petitioner's presence. The petitioner argues that such an inquiry is necessary to make a proper *Jarzbek* assessment according to *State* v. *Bronson*, 258 Conn. 42, 55, 779 A.2d 95 (2001). The petitioner misinterprets *Bronson*, which is factually dissimilar to the present case. In *Bronson*, when the victim was questioned on direct examination regarding the sexual assault, she began crying and was removed from the courtroom by her advocate. Id., 47. The state had represented to the court that the victim's therapist had opined, prior to the victim taking the stand, that the victim would be able to testify, and a *Jarzbek* hearing was not requested before trial. Id., 47 n.6. At the

state's request, the court held a *Jarzbek* hearing shortly after the victim was removed from the stand, wherein the victim's father testified that she was uncomfortable, and the victim's advocate testified that the victim was "mad" at the defendant and scared to return to the courtroom. (Internal quotation marks omitted.) Id., 54–55. Based on this testimony, the court denied defense counsel's motion for an expert evaluation of the victim and ordered the victim's testimony to be videotaped. Id., 49.

Our Supreme Court held that the trial court had abused its discretion in denying the defendant's motion for an expert evaluation and reasoned that the evidence relied on by the trial court came from persons interested in the victim's needs, that there was no inquiry into whether the victim could recover during the weekend, and that the circumstances that occurred were not sufficient to rebut her therapist's opinion that she was able to testify. Id., 55. Under those specific facts, the court concluded that the trial court abused its discretion in denying the defendant's request for a second expert to assess the victim's ability to testify in his presence. Id. In the present case, however, a *Jarzbek* hearing was conducted in *advance* of N's testimony and Goldin testified that N would be "frightened" and "intimidated" and thus unable to testify reliably in the petitioner's presence. There was no requirement that Goldin conduct therapy sessions to assist N to testify, and a failure to do so does not negate her opinion.

The petitioner also argues that trial counsel failed to challenge Goldin's testimony on the ground that her opinion was not based on scientific method and that she lacked the qualifications necessary to make a *Jarzbek* assessment. Our Supreme Court in *State* v. *Spigarolo*, 210 Conn. 359, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989), established that expert opinion evidence is not necessary and that no special qualifications are necessary for a witness to testify at a *Jarzbek* hearing. In *Spigarolo*, the court held that the trial court did not abuse its discretion in admitting the testimony of the victims' father and his wife that, based on their observations of the victims' behavior following the sexual abuse, the victims would be less candid if they were to testify in the defendant's presence. Id., 369–71. The court concluded that: "The family or guardians of a sexually abused child obviously occupy a unique position to assess the mental and emotional impact of a courtroom confrontation on the minor. We have no doubt that the testimony of such individuals may provide critical insight on a minor's ability or inclination to speak truthfully in the physical presence of an alleged perpetrator. We therefore refuse to construe *Jarzbek* as requiring the state to present expert testimony in order to meet its burden of proof." Id., 372. If the victims' father and his wife in *Spigarolo* were able to provide "critical insight" on the victims'

ability to testify reliably based on their observations of the victims' emotional and mental states despite that parent/child relationship, then, a fortiori, Goldin, as N's therapist, who had treated N for two years, had the requisite knowledge of N to offer testimony as to the ability of N to testify in the petitioner's presence. Goldin's testimony at the second habeas proceeding revealed that her impression of N's emotional state was based on her interactions with and observations of N made during therapy sessions. Goldin testified that she "used [her] knowledge of the client and [her] experience in treatment with [N]" to arrive at her assessment that N would be unable to testify in the petitioner's presence. Her testimony revealed that the primary basis for her conclusion was N's anxiety, low self-esteem, and an inability to explain to her mother, who had tried to make N recant her allegations of sexual abuse, her feelings regarding "everything that had happened" despite being in a supportive environment and wanting to do so.

Counsel, nevertheless, challenged the reliability of Goldin's testimony from the viewpoint of her qualifications. Counsel elicited from Goldin that there are no guidelines in her profession for assessing whether a child could testify reliably in the presence of a defendant, and that her opinion was a "judgment call." Goldin further testified on cross-examination that, although she addressed N's ability to testify in the petitioner's presence during a therapy session, she did not conduct a special meeting for that purpose. During voir dire of Goldin at the start of the *Jarzbek* hearing, counsel elicited testimony that she had not been educated in forensic analysis for sexual assault cases.

The petitioner argues that counsel failed to challenge Goldin's testimony on the basis that her role as N's therapist was antithetical to conducting an independent evaluation that was necessary to make an accurate *Jarzbek* assessment. The petitioner highlights the testimony of Goldin at the second habeas proceeding that it was antithetical to her role as N's therapist to try to push N to testify in the petitioner's presence and, that if she did so, N likely would have lost trust in Goldin. The trial court, however, was aware of Goldin's role as N's therapist and counsel adequately established on cross-examination that Goldin had a close professional relationship with N. On direct examination, Goldin testified that N was frightened and anxious to speak in court in the petitioner's presence, that she already had relayed the events of the sexual assault to multiple individuals and did not want to do so again. On cross-examination, Goldin answered the following question of counsel affirmatively: "Your job was to do the best you could to help [N] get over whatever problems she was going through." The court sufficiently was aware of any bias in N's favor that a therapeutic connection might engender. Defense counsel attempted to undermine Goldin's testi-

mony by objecting to the state's question asking Goldin for her opinion as to whether N would be able to participate in the court proceedings, on the ground that the question called for a forensic conclusion and that Goldin's connection with N was with respect to "basic therapy" and was not for the purpose of "a forensic evaluation." Furthermore, the court was aware of *State* v. *Spigarolo*, supra, 210 Conn. 372, in which our Supreme Court held that the parents of the victims brought "insight" to the question of whether the victims could testify reliably in the presence of the alleged perpetrator. See *State* v. *Outlaw*, 179 Conn. App. 345, 353, 179 A.3d 219 (in absence of contrary evidence, judges presumed to know law and apply it correctly), cert. denied, 328 Conn. 910, 178 A.3d 1042 (2018).

The petitioner's argument is grounded in the notion that counsel should have asked certain questions and should have inquired into other areas more deeply. Ivers testified at the first habeas proceeding that part of his strategy was to highlight that Goldin's sessions with N primarily concerned N's relationship with her mother, not the petitioner, and therefore the state could not meet its burden. Ivers cross-examined Goldin on this point, and his decision to not ask questions that the petitioner on appeal now deems relevant does not establish deficient performance. A claim such as this, which concerns the ambit of cross-examination, falls short of establishing deficient performance. See *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). "An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy. . . . The fact that counsel arguably could have inquired more deeply into certain areas, or failed to inquire at all into areas of claimed importance, falls short of establishing deficient performance." (Citation omitted; internal quotation marks omitted.) Id. Trial counsel's line of questioning of Goldin during cross-examination at the *Jarzbek* hearing was tactical in nature and we will not second-guess counsel's strategy.

The petitioner argues that his trial counsel's errors in cross-examination of Goldin were compounded by his counsel's failure to present the testimony of David Mantell, a forensic psychologist, at the *Jarzbek* hearing, in order to challenge the reliability of Goldin's testimony. He contends that the court improperly concluded that counsel's failure to present the testimony of Mantell did not constitute deficient performance. He further argues that Mantell would have testified as to the proper procedure by which to determine whether a complainant could testify reliably, demonstrating that Goldin did not conduct an adequate evaluation and that she was, therefore, unreliable. We are not persuaded.

Trial counsel filed in the trial court a motion pursuant

to *State* v. *Marquis*, 241 Conn. 823, 699 A.2d 893 (1997), seeking to have N examined by the petitioner's expert. Following the *Jarzbek* hearing, the trial court determined that the state had met its burden under *Jarzbek*. It denied the *Marquis* motion, reasoning that Goldin had a two year therapeutic relationship with N, which it was not willing to ignore, and that to have N examined pursuant to a *Marquis* motion would further traumatize and intimidate N.

Ivers testified at the first habeas proceeding that he had contacted Mantell prior to the *Jarzbek* hearing and that his strategy was to file a *Marquis* motion so that Mantell could examine N to see whether she would be able to testify reliably in the presence of the petitioner. Ivers stated that he eventually retained Mantell. Mantell testified before both habeas courts. Regarding Mantell's testimony, Judge Kwak stated: "Dr. Mantell also testified before this court. . . . Dr. Mantell reiterated his criticism of the therapeutic relationship between Goldin and N, and how that relationship resulted in Goldin's *Jarzbek* assessments being too subjective because she was advocating for N, her patient/client. A forensic assessment such as one Dr. Mantell would have conducted on N, according to his testimony, would have been more objective and not influenced by therapeutic goals. Dr. Mantell described his own protocol for *Jarzbek* assessments, as well as steps that can be taken, including therapeutic treatment, to assist a child to become capable of testifying in a defendant's presence when the initial conclusion is to the contrary. Because Dr. Mantell has never conducted an assessment of N, he acknowledged that he cannot form an opinion whether or not N would have been able to testify reliably in the petitioner's presence." (Citation omitted.)

It is the petitioner's burden to overcome the strong presumption that his trial counsel's conduct constituted sound trial strategy that falls within the wide range of reasonable professional assistance.[5] See *Mukhtaar* v. *Commissioner of Correction*, 158 Conn. App. 431, 449, 119 A.3d 607 (2015). Without permission from the court to interview N, Mantell would have testified, as his testimony before the habeas courts reveals, in a generalized way to the procedures he uses to make *Jarzbek* evaluations. This testimony was unlikely to undermine the reliability of Goldin's *Jarzbek* assessment because, as Mantell acknowledged in his testimony at the first habeas proceeding, there is "no published protocol . . . within the psychological field for" performing a *Jarzbek* evaluation. Furthermore, expert testimony is not required at a *Jarzbek* hearing. See *State* v. *Spigarolo*, supra, 210 Conn. 372. Casale testified at the first habeas proceeding that "in the real world the [trial] court is going to go with the testimony of [Goldin who] say[s] that this child cannot testify in an open courtroom over and above a defense expert who may not have even seen the child, but is going to talk, in generalized theory."

The petitioner has not overcome the presumption that trial counsel's decision not to present Mantell's testimony without the court first granting his *Marquis* motion constituted sound trial strategy.

Accordingly, we agree with the second habeas court that the petitioner has not shown that his trial counsel rendered deficient performance either during the cross-examination of Goldin or in declining to present the testimony of Mantell at the *Jarzbek* hearing.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] The petitioner also argues that the court improperly determined that he failed to prove that he suffered prejudice. Because we conclude that the court properly determined that the petitioner did not prove deficient performance, we need not address prejudice. See *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

[3] Following a jury trial, the petitioner was convicted of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of risk of injury to a child in violation of General Statutes (Rev. to 2003) § 53-21 (a) (2), and one count of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2003) § 53a-73a (a) (1) (A). *State* v. *Ruiz*, 124 Conn. App. 118, 119–20, 3 A.3d 1021, cert. denied, 299 Conn. 908, 10 A.3d 525 (2010).

[4] Ivers testified before the first habeas court that he asked Casale to be cocounsel because of Casale's criminal trial experience.

[5] The petitioner also argues that viewing Ivers' decision not to present Mantell's testimony as a reasonable strategic decision is inconsistent with Casale's testimony at the first habeas proceeding that he did not recall if Ivers' decision not to present Mantell's testimony was strategic and that if Ivers were to have presented Mantell's testimony at the *Jarzbek* hearing that "the defense wouldn't lose anything. . . . I[t] wouldn't hurt." There is no inconsistency in Casale's inability to recall if Ivers' decision was strategic and Casale's admission that Mantell's testimony would not harm the defense with Ivers' strategic decision not to present Mantell's testimony.